Argued and submitted June 3, affirmed August 4, reconsideration denied
October 20, 1987

# BRIAN ELWOOD ANDERSON,
*Petitioner on review,*

*v.*

# BOARD OF PAROLE,
*Respondent on review.*

## (CA A41329; SC S33869)

740 P2d 760

Lawrence E. Hall, Deputy Public Defender, Salem, argued the cause for petitioner on review. On the petition for review was Gary D. Babcock, Public Defender, Salem.

J. Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

JONES, J.

Gillette, J., filed a dissenting opinion joined by Linde, J.

## JONES, J.

Petitioner seeks review in this court, alleging that the notice of the action of the Board of Parole (Board) to prisoners does not satisfy ORS 144.135. The statute requires the Board to provide written bases to prisoners of its decisions. ORS 144.135 provides:

"The board shall state in writing the detailed bases of its decisions under ORS 144.110 to 144.125."[1]

Petitioner also claims that the challenged order of the Board "fails to meet the standards established by the Attorney General's Model Rules of Procedure under the Administrative Procedures Act."

Petitioner pled guilty to two counts of burglary in the second degree and one count each of unauthorized use of a vehicle, kidnapping in the second degree, robbery in the first degree and burglary in the first degree. The trial court sentenced petitioner to five years' imprisonment on each of the second degree burglary counts and the counts of unauthorized use of a vehicle and kidnapping. The court imposed 12-year

---

[1] Only ORS 144.110 and 144.120 are germane to this decision; they provide in relevant part:

ORS 144.110:

"(1) In any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes.

"(2) Notwithstanding the provisions of ORS 144.120 and 144.178:

"(a) The board shall not release a prisoner on parole who has been sentenced under subsection (1) of this section until the minimum term has been served, except upon affirmative vote of at least four members of the board."

ORS 144.120:

"(2) In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall apply the appropriate range established pursuant to ORS 144.780. Variations from the range shall be in accordance with ORS 144.785.

"(3) In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall consider the presentence investigation report specified in ORS 144.790 or, if no such report has been prepared, a report of similar content prepared by the Corrections Division.

"(4) Notwithstanding subsection (1) of this section, in the case of a prisoner whose offense included particularly violent or otherwise dangerous criminal conduct or whose offense was preceded by two or more convictions for a Class A or Class B felony or whose record includes a psychiatric or psychological diagnosis of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the board may choose not to set a parole date."

imprisonment sentences on both the first degree burglary and first degree robbery counts and imposed a 5-year mandatory minimum sentence on each. All sentences were to be served concurrently.

The Board did not override the court-imposed 60-month (five-year) minimum sentence and, thus, set petitioner's initial parole release date for November 13, 1990. Petitioner appealed to the Court of Appeals, which affirmed the Board decision from the bench. We affirm the Court of Appeals.

We first turn to the Board's actions, decisions and records to ascertain whether the statutory requirements of ORS 144.135 have been satisfied. The Board's decision in this and all cases is written on a "Board Action Form" (BAF), which is its "final order." ORS 144.335.[2] The BAF contains a statement of the Board's findings of fact and ultimate conclusion as to petitioner's date of release on parole or, in rare cases, when parole is denied. *See* OAR 255-35-030.

We attach as Appendix I the BAF for this petitioner, and we will interpret that form and its supporting documents. The reader will observe from the BAF that, after identifying petitioner by name and noting that he has been incarcerated at the Oregon State Correctional Institution since November 26, 1985, with an adjusted commitment date to November 14, 1985, because of 12 days' credit for time served in the county

_____

[2] ORS 144.335 provides:

"(1) When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, such person is entitled to judicial review of the final order.

"(2) The order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the order for which review is sought. The board shall submit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the board.

"(3) The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper.

"(4) In the case of disputed allegations of irregularities in procedure before the board not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a master appointed by the court to take evidence and make findings of fact upon them."

jail pending incarceration in the state institution, the Board, on July 10, 1986,[3] set his initial date of release on parole for November 13, 1990.

The BAF then reflects that petitioner was convicted of two counts of burglary in the second degree, one count each of vehicle theft, kidnapping in the second degree, robbery in the first degree and burglary in the first degree, and the court's sentence for each conviction.

The next entry, reading left to right, sets forth the five-year minimums on the two class A felonies, robbery and burglary in the first degree. The heading "TS DAYS" refers to Time Served Days, and the form contains the name of the sentencing judge. Below the column listing the crimes appears a line:

"A3 B2 C1 D0 E2 F1 H/R 9 CRIME CAT 5 MATRIX RANGE 16 TO 24"

"A3 B2 C1 D0 E2 F1" is the criminal history/risk of petitioner. Attached as Appendix II is the Criminal History/ Risk Assessment form, which demonstrates that petitioner (A) had no prior felony or misdemeanor convictions or (B) incarcerations and, obviously, (C) had been conviction-free in the community for three years prior to commitment. The history/risk assessment form reveals that he was under 21 years of age and, thus, received no points under risk category (D). He also (E) had no prior parole or probation failures and (F) had no record of substance abuse. Because the Board found that he had no prior criminal history, his only penalty under history/risk assessment was based on age. The Board set his criminal history/risk at "9."

The Board utilized petitioner's most serious crime of Robbery I in setting the crime severity category at "5." The Board has set crime categories for all offenses, ranging from "1" for such crimes as driving while suspended to "7" for

---

[3] ORS 144.120(1) provides that "[w]ithin six months of the admission of a prisoner to any state penal or correctional institution, the board shall conduct a parole hearing to interview the prisoner and set the initial date of release on parole." The Board, which is inundated with approximately 20 such parole date hearings per day, apparently lagged six weeks behind that statutory time requirement, but there is no complaint of delay in this appeal.

aggravated murder. Combining the robbery crime severity category of "5" with the criminal history/risk assessment of "9" places petitioner in a matrix range where he would normally serve from 16-24 months. The Board can choose to go toward the bottom of that range (to 16) or toward the top of that range (to 24) because of a number of considerations, not the least of which is the present population of penal institutions. ORS 144.780.[4]

The BAF then demonstrates that petitioner does not qualify for the 16- to 24-month matrix because the Board voted not to override the 60-month minimum set by the judge and, therefore, petitioner's release date was set for November 13, 1990.

The Board also considers matters in aggravation and mitigation, if any, in each case. We now set forth the aggravation and mitigation criteria utilized by the Board in this case (see Appendixes III and IV). The BAF shows the Board found that petitioner had engaged in conduct considered by the Board as aggravation under categories "A B H K M." Appendix III, which contains explanations corresponding to the letters, shows that the Board found the following aggravating conduct: (A) production or use of a weapon during the criminal episode; (B) threat or violence toward witness or victim; (H) concurrently imposed convictions not arising out of same criminal episode (the burglary and thefts were unrelated to the kidnapping and robbery); (K) engagement in persistent involvement in similar criminal offenses; and (M) criminal

___

[4] ORS 144.780 provides:

"(1) The [Advisory Commission on Prison Terms and Parole Standards] shall propose to the board and the board shall adopt rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. The range for any offense shall be within the maximum sentence provided for that offense.

"(2) The ranges shall be designed to achieve the following objectives:

"(a) Punishment which is commensurate with the seriousness of the prisoner's criminal conduct; and

"(b) To the extent not inconsistent with paragraph (a) of this subsection:

"(A) The deterrence of criminal conduct; and

"(B) The protection of the public from further crimes by the defendant.

"(3) The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the prisoner's present offense and criminal history. Existing correctional resources shall be considered in establishing the ranges."

history more extensive or serious than reflected by history/ risk assessment score. In fact, the record reveals that petitioner had prior convictions for five counts of theft in the second degree as a juvenile and a conviction for "minor in possession," in addition to alleged crimes, not resulting in convictions, of criminal mischief, burglary in the second degree, theft in the first degree, burglary in the first degree and possession of burglar's tools.

The BAF also demonstrates that petitioner was given credit for mitigation factor "H." Appendix IV explains that this was based on the fact that he was ordered to pay restitution after term of imprisonment.

Returning to the BAF, under the heading "COMMENTS/REASONS," the Board recites that petitioner agreed to proceed without information being provided to the Board pursuant to *former* ORS 144.210 (*repealed by* 1985 Or Laws, ch 283, § 1), that his history/risk assessment score and crime severity category were verified and that he agreed with the accuracy of those scores. The form then reflects that Board members Dinsmore, Groener and Hays voted to override the 60-month minimum, but to add a variation for aggravation for a release date of March 13, 1988, and that Board members Jones and Samuelson voted to sustain the 60-month minimum.

The Board rules provide that it takes four out of five affirmative votes by the Board members to override a minimum sentence, OAR 255-35-023(1), as does ORS 144.110(2)(a). ORS 144.110(2)(a) does not specifically require that each member state his or her reasons for making the decision to or not to override a minimum sentence, but ORS 144.135 does include reference to ORS 144.110. Thus, the question is, what statement of detailed bases must be made as to the minimum sentence decision?

The "decision" to be made is when to set the parole release date; it will be set at the expiration of the mandatory minimum sentence unless the mandatory minimum is overridden. The Board did decide not to override the minimum sentence. ORS 144.135 requires a statement in writing describing a detailed basis for that decision. Subsequent to the passage of this statute, the Board adopted its own administrative rules, Oregon Administrative Rules, Chapter 255,

Division 35 - Board of Parole. The rule the Board adopted concerning judicial minimum sentences on prison terms under ORS 144.110 is OAR 255-35-023, which reads as follows:

"(1)   The Board shall not release a prisoner before a judicially imposed minimum prison term sentence has been served except when at least four members of the Board find that:

"(a)   The court applied the guideline rules incorrectly; or

"(b)   The Board has information not available to the court at the time of sentencing; or

"(c)   The court's findings, though technically correct, lead to an inequitable result.

"(2)   The Board shall state the facts and reasons for its actions and it shall then inform the sentencing court of its decisions and reasons. The Board shall then set an initial parole release date in accordance with rule 255-35-013."

■■■       We interpret this rule to mean that the Board may not override a minimum sentence unless four of its members make findings concerning one or more of three specific categories and that, if the Board decides to override a minimum sentence, it is obliged to inform the sentencing court of its decisions and reasons. The rule, although somewhat ambiguous, does not suggest that the Board state the facts and reasons for its actions in not overriding the minimum term. Implicit in that vote is a determination by at least four members of the Board that paragraphs (a), (b) and (c) of subsection (1) of the rule were not applicable. We interpret the rule to require the Board to state the facts and reasons for its actions only when four members of the Board find applicable one or more of the three categories listed under subsection (1). Paragraph (a) requires a finding that the court applied the guideline rules incorrectly. Although sentencing judges are not, at this time, bound by guideline rules of the Board, judges sometimes do make findings as to criminal history/risk, crime severity, and aggravation and mitigation factors which subsequently may be found to be incorrect on review by the Board. Paragraphs (b) and (c) of the rule are self-explanatory. Therefore, the administrative procedure for minimum sentence review works like this: The Board takes a vote to overrride the minimum sentence. If four votes are not garnered to override, the basis for the decision simply results from the lack of four

affirmative votes on that issue. The vote and who made it constitute the basis for the decision not to override. The Board, or the subset voting not to override, need not "come to a point" where they have agreed upon some set of findings of fact and conclusions of law; the absence of four affirmative votes alone determines the Board's decision regardless whether there is any agreement as to why the Board has refused to override. In such a case, the prisoner's parole date is set at the expiration of the mandatory minimum sentence and the criteria, justification or "detailed bases" for such Board action are simply that there are not enough votes to override.

If four members agree to override the minimum sentence, the Board is obligated under OAR 255-35-023(2) to state the facts and reasons for its actions pursuant to OAR 255-35-023(1)(a), (b) and (c), and is further obligated to inform the sentencing court of its facts and reasons for the decision. Having agreed to override the minimum sentence, the Board then is obligated to set an initial parole release date in accordance with OAR 255-35-013, which provides:

"(1) Except in those cases under OAR 255-32-025 the Board shall make findings of fact regarding a prisoner's:

"(a) Crime severity rating;

"(b) History/risk score;

"(c) Guideline range;

"(d) Aggravation/mitigation.

"(2) The Board shall then, except as provided by OAR 255-35-030 (parole denial) and 255-38-005 (dangerous offender), establish an initial parole release date and inform the prisoner of that date."

As demonstrated by this case, there was no consensus by the Board members. After evaluating the entire record, two members elected not to override the minimum and three would have. We perceive no purpose to be served by requiring the Board members to state their individual reasons for not voting to override the minimum sentence imposed. Neither the statute nor the Board rules require such statements. In sum, the Board complied with ORS 144.135 by setting forth in writing the bases for its decision under ORS 144.110 to 144.125.

Petitioner's last contention, that the Board's order "fails to meet the standards established by the Attorney General's Model Rules of Procedure under the Administrative Procedures Act," is without merit. ORS 183.341[5] requires the Attorney General to prepare model rules of procedure "appropriate for use by as many agencies as possible." Petitioner admits this statute does not mandate that the Board adopt these model rules of procedure, but argues that the legislature intended that the model rules of procedure prepared by the Attorney General's Office should set the standard for all state agencies to follow and that this court should gauge the adequacy of the challenged order upon both the standards set by the Attorney General's Model Rules of Procedure and the statutory requirements of ORS 144.135.

The Board has no legal obligation to adopt the Attorney General's model rules. In lieu thereof, the Board has developed and adopted extensive comparable administrative rules of procedure as required by ORS 183.341(2). None of these rules are challenged in this appeal and, when implemented as they were in this case, satisfy ORS 144.135.

The order of the Board of Parole and the decision of the Court of Appeals are affirmed.

---

[5] ORS 183.341 provides:

"(1) The Attorney General shall prepare model rules of procedure appropriate for use by as many agencies as possible. Any agency may adopt all or part of the model rules by reference without complying with the rulemaking procedures under ORS 183.335. Notice of such adoption shall be filed with the Secretary of State in the manner provided by ORS 183.355 for the filing of rules. The model rules may be amended from time to time by an adopting agency or the Attorney General after notice and opportunity for hearing as required by rulemaking procedures under ORS 183.310 to 183.550.

"(2) All agencies shall adopt rules of procedure to be utilized in the adoption of rules and conduct of proceedings in contested cases of, if exempt from the contested case provisions of ORS 183.310 to 183.550, for the conduct of proceedings."

AUG 01 1986

**OREGON BOARD OF PAROLE**
**BOARD ACTION FORM**

06/28/1965

NAME ANDERSON, BRIAN ELWOOD    DATE ADM 11/26/1985    DOB _____ CC PROB _____

SID # 6557166    INST # 13557    ADJ COMT 11/14/1985    RACE _____ DET/NOT _____

INST OSCI    GOODTIME 11/16/1993    SEX _____ BR OFF _____

AKA _____    EXP DATE 11/16/1997    HGT _____ ADD CONVS _____

| CASE #<br>COUNTY | ORS#OFFCLS<br>OFFENSE | CTS | SENTENCE<br>MIN SENT | MAN<br>MIN | CS<br>TO | SENTENCE<br>BEGINS | TS<br>DAYS | JUDGE |
|---|---|---|---|---|---|---|---|---|
| 84-1094<br>JOSE | 164.215 CF<br>BURG II | 01 | 05/00/00 | | | 11/18/85 | 012 | NEUFELD |
| 84-1229<br>JOSE | 164.215 CF<br>BURG II | 01 | 05/00/00 | | | 11/18/85 | 012 | NEUFELD |
| 85-CR-111<br>JOSE | 164.135 CF<br>THEF VEHI | 01 | 05/00/00 | | | 11/18/85 | 012 | NEUFELD |
| 85-CR-111<br>JOSE | 163.225 BF<br>KIDN II | 01 | 05/00/00 | | | 11/18/85 | 012 | NEUFELD |
| 85-CR-111<br>JOSE | 164.415 AF<br>ROBB I | 01 | 12/00/00 | 05/00 | | 11/18/85 | 009 | NEUFELD |
| 85-CR-338<br>JOSE | 164.225 AF<br>BURG I | 01 | 12/00/00 | 05/00 | | 11/18/85 | 009 | NEUFELD |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

A 3 B 2 C 1 D 0 E 2 F 1 H/R 9 CRIME CAT 5 MATRIX RANGE 16 TO 24 DANG OFF _____ SEX OFF _____

HEARING DATE 07/10/1986    ACTIVITY PT    ACTION S    MOS SET 60    RELEASE DATE 11/13/1990

AGGRAVATION A,B,H,K,M MITIGATION H _____ RESCHEDULE _____ TYPE _____ W/PSYCH _____ PANEL F

COMMENTS / REASONS

INMATE SIGNED ORS 144.210 WAIVER ELECTING TO PROCEED WITHOUT INFORMATION AS
REQUIRED BY STATUTE. INMATE WAS ACCOMPANIED BY HIS WIFE, BEVERLY ANDERSON.
BOARD RECOMPUTED H/R SCORE ACCORDING TO REVISED MATRIX EFFECTIVE 07/15/85 AND
FOUND NO CHANGE.
BOARD FINDINGS: H/R SCORE 09; CRIME CATEGORY 05; MATRIX RANGE OF 16 TO 24
MONTHS. INMATE AGREES WITH ACCURACY OF H/R SCORE.
DINSMORE, GROENER, HAYS: OVERRIDE 60 MONTH MINIMUM, APPLY 1 STANDARD VARIATION
FOR AGGRAVATION, SET AT 28 MONTHS FOR A RELEASE DATE OF MARCH 13, 1988.
JONES: SUSTAIN 60 MONTH MINIMUM FOR A RELEASE DATE OF NOVEMBER 13,1990.
SAMUELSON: ABSENT, WILL REVIEW. (SUSTAIN 60 MONTH MINIMUM, ESTABLISHING A
RELEASE DATE OF NOVEMBER 13, 1990. AH SAMUELSON 7/14/86)

SPECIAL CONDITIONS    1 2 3 4 5 6 7 8    OTHER CONDITIONS
9A 9B 9C PO BD 10
11 (12) 13 14 15 16

TENTATIVE DISCHARGE. 6 MOS S

SIGNATURE, PRESIDING MEMBER /S/ HAYS / MJH _____ DATE 07/14/1986

APPENDIX I

255-039 06/85

MATRIX APPLICATION

CRIMINAL HISTORY RISK ASSESSMENT

Item

(A) (No) prior felony convictions as an adult or juvenile:     3
    One prior felony conviction:     2
    Two or three prior felony convictions:     1
    Four or more prior felony convictions:     0    *3*

(B) (No) prior felony or misdemeanor incarcerations (i.e.,
    executed sentences of 90 days or more), as an adult
    or juvenile:     2
    One or two prior incarcerations:     1
    Three or more prior incarcerations:     0    *2*

(C) Verified period of three years conviction free in the
    community prior to the present commitment:     1
    Otherwise:     0    *1*

(D) Age at commencement of behavior leading to this   DOB: *6·28·65*  Age: *20*
    incarceration:
    26 or older and at least one point received in
    Items A, B, or C:     2
    26 or older and no points received in A, B, or C:     1
    21 to under 26 and at least one point received in A, B, or C:     1
    21 to under 26 and no points received in A, B, or C:     0
    Under 21:     0    *O*

(E) Present commitment does not include parole, probation,
    failure to appear, release agreement, escape or custody
    violation:     2
    Present commitment involves probation, release agreement,
    or failure to appear violation:     1
    Present commitment involves parole, escape or custody
    violation:     0    *2*

(F) Has (no) admitted or documented substance abuse problem
    within a 3 year period in the community immediately
    preceding the commission of the crime of conviction:     1
    Otherwise:     0    *1*

TOTAL HISTORY RISK SCORE:    *9*

| Offense | History /Risk | Crime Severity | Matrix Range | CC/CS |
|---|---|---|---|---|
| Burglary II | 9 | 1 | 6 to 6 months | |
| Burglary II | 9 | 1 | 6 to 6 months | CC |
| U.U.M.V. | 9 | 1 | 6 to 6 months | CC |
| Kidnapping II | 9 | 4 | 10 to 16 months | CC |
| Robbery I | 9 | 5 | 16 to 24 months | CC |
| Burglary I | 9 | 3 | 6 to 10 months | CC |

Prepared by: *T. Hammerschmith.*

Office: *PSR Unit.*

Date: *5·15·86*

Page *2* of *6*

Total Range: *16* to *24* months

Crime Severity: *5*

Adjusted Commitment Date: _____

Inmate: *Anderson, Brian Elwood.*

Inst #: *13557*

002

APPENDIX II    255-019-06/85

### AGGRAVATING FACTORS

_____ A. Production or use of any weapon during the criminal episode.

_____ B. Threat or violence toward witness or victim.

_____ C. Knew or had reason to know the victims were particularly vulnerable (i.e., aged, handicapped, very young).

_____ D. Ability to make restitution or reparation and failed to do so.

_____ E. Violation of position of public trust or recognized professional ethics.

_____ F. Degree of property loss, personal injury or threatened personal injury substantially greater than characteristic for the crime.

_____ G. There is a single conviction for a crime involving multiple victims or incidents.

✓ H. Concurrently imposed convictions not arising out of same criminal episode. 84.1094C, 84.1229.C, 85.CR.111 and 85.CR.338 all separate.

_____ I. Verified instances of repetitive assaultive conduct.

_____ J. More than 3 trust violations in last 5 years as relates to Item E of the Matrix computation.

_____ K. Persistent involvement in similar criminal offenses.

_____ L. Repetition of behavior pattern which contributes to criminal conduct (e.g., return to drug or alcohol abuse).

_____ M. Criminal history more extensive or serious than reflected by history risk score.

_____ N. Pursuant to a Guilty or No Contest plea, other crimes were dismissed or not prosecuted.

_____ O. New criminal activity while on escape or reduced custody status.

_____ P. Persistent criminal misconduct while under supervision.

_____ Q. Other. _____

Inmate: Anderson, Brian Elwood          00% Inst #: 13557

Page _5_ of _6_          APPENDIX III          255-018-06/85

MITIGATING FACTORS

_____ A. Victim provoked crime to a substantial degree, or other evidence that misconduct by victim contributed to the criminal episode.

_____ B. Special effort on the part of the perpetrator to minimize the harm or risk.

_____ C. Peripheral involvement in the criminal episode (e.g., passive accessory).

_____ D. Sustained effort to make restitution or reparation.

_____ E. Degree of property loss, personal injury or threatened personal injury substantially less than characteristic for the crime.

_____ F. Evidence of withdrawal, duress, necessity or lack of sustained criminal intent.

_____ G. Evidence of reduced responsibility or lack of mental capacity (e.g., mental retardation which is insufficient to constitute a defense, but is indicative of reduced culpability).

__✓__ H. Ordered to pay restitution after term of imprisonment.
_See p 1 this PAR for details_

_____ I. Successful period of community supervision, at least 24 months.

_____ J. Effort to deal with problems associated with past criminal conduct, (e.g., successful completion of treatment program, abstinance from substance abuse).

_____ K. Evidence of no new criminal activity while on escape or abscond status.

_____ L. Criminal history less extensive or serious than reflected by history risk score.

_____ M. Consecutive sentences imposed for convictions resulting from a single criminal episode.

_____ N. Probation violation is non-criminal in nature and not indicative of ongoing criminal pattern.

_____ O. Other._____ _____

Inmate: _Anderson, Brian Elwood_ ``` 00 Inst #: _13557_

Page __6__ of __6__   APPENDIX IV   255-017-06/85

**GILLETTE, J.,** concurring in part and dissenting in part.

The majority has, with exemplary care and precision, explained the intricacies of the BAF. 303 Or at 620-24. I join in that portion of the opinion and in all or so much of the other opinions in this series of cases that deal with that issue. I regret that I cannot join in the balance of the opinion, *i.e.,* the portion that deals with ORS 144.135 and its requirement that the Board announce the "detailed bases" of its decision not to override a minimum sentence, or in similar portions of six other opinions.

To restate the issue: In any felony case, a sentencing judge may impose a minimum term of imprisonment of up to one-half of the total sentence the judge imposes. ORS 144.110(1). A prisoner must serve at least the minimum before he can be released on parole. However, this minimum sentence may be negated by the "affirmative vote of at least four members of the [B]oard." ORS 144.110(2)(a). A person under the Board's jurisdiction is entitled to judicial review of the Board's action under ORS 144.335(1) and (2). In rendering its decisions under, *inter alia,* ORS 144.110(2)(a), the Board is required to "state in writing the detailed bases of its decisions." ORS 144.135. The bone of contention in this case concerns what, at minimum, the Board must say in its order declining to overrule a minimum sentence imposed under ORS 144.110(2)(a), in order to satisfy the mandatory requirement of a statement of "detailed bases" under ORS 144.135.

The majority says,

> "The 'decision' to be made is when to set the parole release date; it will be set at the expiration of the mandatory minimum sentence unless the mandatory minimum is overridden." 303 Or at 624.

If the majority is correct in its determination that the only "decision" under ORS 144.110(2)(a) is that setting the parole release date, the discussion should be over. As the majority opinion amply demonstrates, 303 Or 620-24, the parole release date set *is* explained in great detail.

Unfortunately, this simplistic view of the statute only works until the statute is read. In full, ORS 144.110 provides:

"(1)   In any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes.

"(2)   Notwithstanding the provisions of ORS 144.120 and 144.178:

"(a)   The board shall not release a prisoner on parole who has been sentenced under subsection (1) of this section until the minimum term has been served, except upon affirmative vote of at least four members of the board.

"(b)   * * * * *"

The setting of the parole release date, which the majority claims is the "decision" in ORS 144.110(2)(a) to which the cross reference in ORS 144.135 refers, *is not even mentioned* in ORS 144.110. That date is set under ORS *144.120*. The majority's major premise is just plain wrong. The "decision" under ORS 144.110(2)(a) is to override, or not to override, the mandatory minimum sentence. Either action is a "decision." Either action calls, by the express language of ORS 144.135, for a statement in writing of "the detailed bases" of the decision.

The majority also discusses, perhaps as an alternative explanation of its holding, OAR 255-35-023, which I reproduce here for convenience:

"(1)   The Board shall not release a prisoner before a judicially imposed minimum prison term sentence has been served except when at least four members of the Board find that:

"(a)   The court applied the guideline rules incorrectly;[1] or

"(b)   The Board has information not available to the court at the time of sentencing; or

"(c)   The court's findings, though technically correct, lead to an inequitable result.

"(2)   The Board shall state the facts and reasons for its actions and it shall then inform the sentencing court of its decisions and reasons. The Board shall then set an initial parole release date in accordance with rule 255-35-013."

The majority says, concerning this rule:

"We interpret this rule to mean that the Board may not

---

[1] The rule does not explain its reference to "the guideline rules."

override a minimum sentence unless four of its members make findings concerning one or more of three specific categories and that, if the Board decides to override a minimum sentence, it is obliged to inform the sentencing court of its decisions and reasons. The rule, although somewhat ambiguous, does not suggest that the Board state the facts and reasons for its actions in not overriding the minimum term. Implicit in that vote is a determination by at least four members of the Board that paragraphs (a), (b) and (c) of subsection (1) of the rule were not applicable. We interpret that rule to require the Board to state the facts and reasons for its actions only when four members of the Board find applicable one or more of the three categories listed under subsection (1). * * *." 303 Or at 625.

The reason for including the foregoing discussion of OAR 255-35-023 is unclear, if the majority stands by its earlier statement that the setting of the parole release date is the pertinent "decision" here. It is implicit from this last quoted statement, however, that the majority acknowledges that, at the least, a decision to *override* the minimum is also a "decision" under ORS 144.135. There is no other justification for this extensive discussion.

And, if the decision *to* override is a "decision," why is the decision *not to* override not a decision? The majority never explains; I do not believe an explanation is possible. Both are decisions. Both are governed by the language of ORS 144.135. Either way, the Board must comply with ORS 144.135.

The majority ultimately appears to come to the same conclusion, *viz.,* that both overriding and refusing to override are decisions, because it argues:

"Therefore, the administrative procedure for minimum sentence review works like this: The Board takes a vote to override the minimum sentence. If four votes are not garnered to override, the basis for the decision simply results from the lack of four affirmative votes on that issue. The vote and who made it constitute the basis for the decision not to override. The Board, or the subset voting not to override, need not 'come to a point' where they have agreed upon some set of findings of fact and conclusions of law; the absence of four affirmative votes alone determines the Board's decision regardless whether there is any agreement as to why the Board has refused to override. In such a case, the prisoner's parole

date is set at the expiration of the mandatory minimum sentence and the criteria, justification or 'detailed bases' for such Board action are simply that there are not enough votes to override." 303 Or at 625-26.

In this passage, the majority is determined to crush any suggestion that those voting not to override a minimum sentence (or, for that matter, those who do vote to override, if there are at least four of them) must have a common reason for their vote. Of course, if the vote is not a decision at all — as the majority appears to have said previously — this entire discussion is academic. If, on the other hand — as the majority appears to have acknowledged elsewhere and as I think is ineluctable — the vote is a "decision," the majority's point is unpersuasive because it offers no reason for its repeated conclusions. The statement apparently intended as explanation, *viz.,* "the absence of four affirmative votes alone determines the Board's decision," is merely descriptive of an event; it does not explain or justify the majority's conclusion.

As I have indicated, the majority's linguistic imprecisions really result from a failure to keep two questions separated: (1) Is the ORS 144.110(2)(a) vote by the Board, no matter which way it goes, a "decision"? and (2) if it is, what "detailed bases" are required to explain that decision? As I have indicated also, the answer to the first question is "yes." The majority should simply say so and move on.

The second issue is tougher. No legislative history explains what the legislature thought the combination of ORS 144.110(2)(a) and 144.135 would produce in the way of "detailed bases." We only have the statutory language that declares that there shall be some. We are left to flesh out the requirement, guided only by the words themselves.

I have no difficulty in saying that "bases," in ORS 144.135, means the reasons or justifications for decisions. The requirement that the bases be "detailed" means that the actual, specific reasons for a decision, rather than mere rote recitation of a conclusion, must be announced. Thus, mere announcement of the outcome of the vote is no "detailed" statement. Some statement as to the *reasons for* the votes that led to that mathematical outcome is required.

There are two possible ways in which this requirement that I perceive in the statutory scheme might be met.

First, the prevailing side (the four or more Board members who vote to override the minimum, or the two or more who vote not to do so) could be required to agree upon a common rationale. This interpretation could be justified by general administrative law principles — the Board is an agency and the decision with respect to the mandatory minimum is a Board decision.

On the other hand, the statute might be satisfied if each individual Board member on the prevailing side were to state his or her own reasons. The majority says, "We perceive no purpose to be served by requiring the Board members to state their individual reasons for not voting to override the minimum sentence imposed." 303 Or at 626. With respect, I do see a reason — requiring the statement of each member's individual reasons may encourage consensus or expose analytical error, leading to a different conclusion. It ensures, for example, that no legally-impermissible rationale, such as the race or ethnic background of the prisoner, is used by a member. Such a requirement is completely consistent with the legislative policy embodied in the Administrative Procedure Act (and throughout the statutes) that decisions by administrative agencies shall be principled and fair, rather than *ad hoc* and unstructured.

While I believe the statutory language justifies either rule, I believe the one requiring statements of individual reasons best comports with the nature and scope of the Board's burdensome caseload.[2] The Board may even be able to devise a form like the BAF to facilitate the process by listing all of the commonly-used reasons for overriding (or refusing to override) a mandatory minimum sentence. But *something* of the sort must be done, or the legislative demand in ORS 144.135 for an explanation of the Board's actions will, at least with respect to ORS 144.110(2)(a), go totally unanswered.[3] Or, to

---

[2] The majority's argument that the Board hasn't time to do this is defeated by the record in this case — the three members who wanted to override the minimum made a record.

[3] Two recent United States Supreme Court decisions demonstrate the importance of the rights involved here. In *Board of Pardons v. Allen,* ____ US ____, 107 S Ct 2415, 96 L Ed 2d 303 (1987), the Court held that a Montana statute that required parole release unless certain designated findings were made created a liberty interest in parole release protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In *Miller v. Florida,* ____ US ____, 107 S Ct 2446, 96

put it another way, the Board's action in this case might as well read: " 'No,' they explained."

I respectfully dissent.

Linde, J., joins in this concurring and dissenting opinion.

---

L Ed 2d 351 (1987), the Court held that the application of Florida's revised sentencing guidelines law to the petitioner, whose crimes occurred before the revised guidelines became effective, violated the Ex Post Facto Clause of the United States Constitution.