Filed:  December 13, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
acting by and through the Oregon State Treasurer,
and the  Oregon Public Employee Retirement Board,
on behalf of the Oregon Public Employee Retirement Fund,

Petitioner on Review,

v.

MARSH & MCLENNAN  COMPANIES, INC.
and MARSH, INC.,

Respondents on Review,

and

JEFFREY GREENBERG
and RAY GROVES,

Defendants.

(CC 050808454; CA A139453; SC S059386)

En Banc

On review from the Court of Appeals.*

Argued and submitted December 7, 2011.

Keith S. Dubanevich, Special Counsel, Salem, argued the cause for petitioner on review.  With him on the briefs were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

James T. McDermott, Ball Janik LLP, Portland, argued the cause for respondents on review.  With him on the brief was Dwain M. Clifford.

Kim T. Buckley and John W. Stephens, Esler, Stephens & Buckley, LLP, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association and Economic Fairness Oregon.

Meyer Eisenberg, Washington D.C., and Franklin Jason Seibert, F.J. Seibert, LLC, Salem, filed a brief on behalf of *amici curiae* Meyer Eisenberg and Franklin Jason Seibert.

Robert S. Banks, Jr., Banks Law Office, PC, Portland, filed a brief on behalf of *amicus curiae* North American Securities Administrators Association.

DE MUNIZ, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

\*Appeal from Multnomah County Circuit Court, Frank L. Bearden, Judge. 241 Or App 107, 250 P3d 371 (2011).

DE MUNIZ, J.

This case arises under provisions of the Oregon Securities Law set out in ORS chapter 59. The State of Oregon, acting by and through the Oregon State Treasurer, and the Oregon Public Employee Retirement Board (PERB), on behalf of the Oregon Public Employee Retirement Fund (PERF) (collectively, "state"), have asserted claims against Marsh & McLennan Companies, Inc. (MMC) and Marsh, Inc. (MI) (collectively, "Marsh"). The state alleges that Marsh engaged in a scheme perpetrated by false and misleading statements that caused the state to lose approximately $10 million on investments in Marsh stock. The state contends that the actions of Marsh violate ORS 59.135 and ORS 59.137. Marsh asserted below, and asserts on appeal, that the state's claims must fail because ORS 59.135 and ORS 59.137 require a showing of reliance by the state, the state failed to establish any direct reliance by state actors on any actions by Marsh, and the state could not establish the required reliance by means of a presumption of reliance based on the "fraud-on-the-market" doctrine.[1] For the reasons that follow, we determine that ORS 59.137 requires a stock purchaser to establish reliance, but that a

---

[1] The "fraud-on-the-market" doctrine refers to a rebuttable presumption establishing the reliance element in securities fraud cases that was addressed and accepted by the United States Supreme Court in *Basic Inc. v. Levinson*, 485 US 224, 247, 108 S Ct 978, 99 L Ed 2d 194 (1988). The doctrine is grounded in the theory that the price of a security traded on the open market is based on publicly available information and that material misrepresentations therefore artificially distort a security's price, thereby establishing indirect or second-order reliance by a purchaser of the security, even if that purchaser did not rely on the misrepresentations directly. We discuss the doctrine in greater detail below.

stock purchaser who purchases stock on an efficient, open market may establish reliance by means of the "fraud-on-the-market" presumption.

The state's amended complaint alleges that the state purchased more than $15 million of common stock in MMC in the open market on the New York Stock Exchange (NYSE) in 2003 and 2004. The state further alleges that the MMC shares are traded on an efficient securities market, that the price of MMC shares traded on the NYSE during 2003 and 2004 reflected the material information that Marsh disclosed to the market, and that the price of MMC shares was artificially inflated because of misrepresentations made by Marsh. The state contends that Marsh made three types of misrepresentations: falsely representing that Marsh had complied with a strict ethical code of conduct; misrepresenting the nature of contingent commission agreements that Marsh had with brokers; and concealing the fact that MMC's reported financial results had been achieved through unethical and illegal business practices. The state's complaint further alleges that the state's money managers who purchased MMC stock had no reason to know of those misrepresentations and would not have purchased the MMC stock at the price paid had they known of those misrepresentations. Finally, the state asserts that the misrepresentations were brought to light through an investigation by the New York Attorney General and that, once the misrepresentations were disclosed in October 2004, the price of MMC stock declined some 37 percent causing the state to lose approximately $10 million in damages.

The state's complaint claims that the course of misrepresentation engaged in by Marsh violated ORS 59.135 and ORS 59.137. The trial court granted summary

2

judgment in favor of Marsh on two grounds.  The trial court determined that the provisions of ORS 59.135 and ORS 59.137 require proof of reliance, that the state had not established proof of actual reliance, and that the state could not establish reliance by means of a presumption of reliance based on the "fraud-on-the-market" doctrine.  The trial court also determined that ORS 59.137(1) violated the  Dormant Commerce Clause of the United States Constitution because Oregon's statutory scheme does not require the purchaser of stock to establish *scienter* -- *i.e.*, that the stock issuer's or stock seller's misrepresentations or omissions were intentional.

On the state's appeal, the Court of Appeals affirmed the trial court's determination that actual reliance must be established by a stock purchaser under ORS 59.135 and ORS 59.137 and that a stock purchaser cannot establish reliance through the "fraud-on-the-market" presumption.  The Court of Appeals did not address whether *scienter* must be established under the Oregon statutes, nor did the Court of Appeals reach the constitutional issue decided by the trial court.  For the reasons that follow, we determine that ORS 59.137 requires a stock purchaser to establish reliance, but that the reliance element required by that statute may be established by a plaintiff who purchases stock on an efficient, open market by means of the presumption available under the "fraud-on-the-market" doctrine.  At this stage of proceedings, we do not address, and we express no opinion on, whether *scienter* must be proved to establish a claim under ORS 59.135 and ORS 59.137, nor do we address any constitutional issues related to the

3

*scienter* issue.[2]

RELIANCE

The state contends that it need not establish any form of reliance as part of its claim. The state bases its argument on what it perceives to be a straightforward application of statutory construction principles. The state asserts that neither ORS 59.135 nor ORS 59.137 contains any express reliance requirement and that the context of those statutes provides additional support for its position that no reliance is required. Because the statutory terms are significant and central, we set them out here to provide a frame of reference.

ORS 59.137(1) provides:

"(1) Any person who violates or materially aids in a violation of ORS 59.135(1), (2) or (3) is liable to any purchaser or seller of the security for the actual damages caused by the violation, including the amount of any commission, fee or other remuneration paid, together with interest at the rate specified in ORS 82.010 for judgments for the payment of money, unless the person who materially aids in the violation sustains the burden of proof that the person did not know and, in the exercise of reasonable care, could not have known of the existence of the facts on which the liability is based."

ORS 59.135 provides, in part:

"It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security or the conduct of a securities

---

[2] We agree with the Court of Appeals that the proper framework for analysis of the constitutional issues surrounding the *scienter* issue is preemption analysis, rather than Dormant Commerce Clause analysis, but we do not address the proper outcome of that preemption analysis in this opinion. We note this point only to assist the parties and the lower courts in addressing issues left to be resolved following remand from this court.

business or for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise:

> "(1) To employ any device, scheme or artifice to defraud;

> "(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

> "(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person[.]"

The state correctly notes that these two statutes do not contain the terms *rely* or *reliance*. Based on the methodology established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), the state asserts that the text of these statutes is unambiguous, that the text does not contain a reliance requirement, and that inserting a reliance requirement into the statutory claim established by ORS 59.137 would violate the provisions of ORS 174.010, which generally precludes a court from inserting into statutes terms that the legislature has omitted.[3]

To sustain its position, the state begins its statutory interpretation by separating the statutory terms in ORS 59.137(1) into constituent parts and then providing

---

[3]     ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

5

what it asserts are the most reasonable definitions of those parts. The state posits that the text of ORS 59.137(1) provides three instructions regarding who may bring a claim, against whom such a claim may be brought, and what damages may be recovered. The state derives those three instructions from the terminology in ORS 59.137(1), asserting that the instructions result from

> "three successive phrases in ORS 59.137(1): 'a person who violates or materially aids in a violation of ORS 59.135 (1), (2) or (3) is liable'; 'to any purchaser or seller of the security'; and 'for actual damages caused by the violation.'"

In particular, the state suggests that the phrase "for actual damages caused by the violation" limits the claim to actual damages and that the terms "caused by the violation" limit the damages to those brought about by the defendant's conduct without introducing any requirement that the purchaser of the security rely on the defendant's conduct -- *i.e.,* in the state's view, the terms "caused by" do not expressly or necessarily limit damages to those resulting from a plaintiff's reliance. As support, the state cites to a definition of "cause" set out in Black's Law Dictionary, defining cause as "[t]o bring about or effect." *See Black's Law Dictionary* 213 (7th ed 2002). Conversely, Marsh asserts that *Webster's Collegiate Dictionary* (10th ed 2000) defines "cause" to mean "a reason for action or condition: MOTIVE." Marsh argues that, in analyzing an alleged misstatement made in relation to the purchase of a security, the plaintiff's "motive" or "reason" for purchasing the security forms the requisite causal nexus between the alleged misstatement and the plaintiff's damages.

When we undertake our own review of dictionary definitions, we observe

6

that both definitions of the term "cause" that the parties emphasize are reasonably applicable here. *Webster's Third New Int'l Dictionary* 356 (unabridged ed 2002) provides the following definition of the noun "cause":

> **"1a**: a person, thing, fact or condition that brings about an effect or that produces or calls forth a resultant action or state * * * **b:** a reason or motive for an action or condition * * * **c:** a good or adequate reason: a sufficient activating factor * * *."

And *Webster's* similarly defines the verb "cause" to mean:

> **"1:** to serve as cause or occasion of: bring into existence: MAKE * * * **2:** to effect by command, authority, or force * * *."

*Id.*

Marsh has the better of the textual argument. The state essentially posits a strict liability theory, contending that a defendant can be found liable for all losses whether or not any stock purchaser relied on any misrepresentations made by the defendant. We think that it is significant, however, that even the definition of "cause" on which the state relies requires some causal link between the misrepresentation made and the damages that result. In our view, the necessary causal link involved in the sale and purchase of a security is reliance in some form by the purchaser on misrepresentations made by those involved in selling the stock -- otherwise, the damages suffered by the stock purchaser have not been "caused by" their misrepresentations.

We do not conclude our statutory analysis by viewing the textual terms of ORS 59.137(1) in isolation, however. For further guidance, we now turn to an examination of contextual clues.

The state cites to ORS 59.135 as providing significant context for the

7

provisions of ORS 59.137(1).  We think the state's citation to ORS 59.135 as significant context for determining whether a claim brought under ORS 59.137 requires reliance is unpersuasive for the following reasons.  First, ORS 59.135 merely sets out a standard of conduct that applies to causes of action that may be pursued under either ORS 59.137 or ORS 59.115.  And, that same standard also applies to enforcement actions that may be pursued by the Director of the Department of Consumer and Business Services (DCBS) under ORS 59.255.[4]  An action brought by the Director of DCBS to enjoin a person from

---

[4]    ORS 59.255 provides, in part:

"(1) Whenever it appears to the Director of the Department of Consumer and Business Services that a person has engaged, is engaging or is about to engage in an act or practice constituting a violation of any provision of the Oregon Securities Law or any rule or order of the director, the director may bring suit in the name and on behalf of the State of Oregon in the circuit court of any county of this state to enjoin the acts or practices and to enforce compliance with the Oregon Securities Law or such rule or order.  Upon a proper showing, a permanent or temporary injunction, restraining order or writ of mandamus shall be granted.

"* * * * *

"(4) The director may include in any action authorized by this section:

"(a) A claim for restitution or damages under ORS 59.115,  59.127 or 59.137, on behalf of the persons injured by the act or practice constituting the subject matter of the action.  The court shall have jurisdiction to award appropriate relief to such persons, if the court finds that enforcement of the rights of such persons by private civil action, whether by class action or otherwise, would be so burdensome or expensive as to be impractical; or

"(b) A claim for disgorgement of illegal gains or profits derived.  Any recovery under this paragraph shall be turned over to the General Fund

8

engaging in an act or practice that the person is "about to engage in," but that has not yet occurred, by definition does not require reliance. But a claim for restitution or damages that may be included in such an enforcement action under ORS 59.255(4) may require reliance by the persons injured in order to support that claim. Although we do not reach any determination about the necessary elements required to establish a claim under ORS 59.255(4), we do conclude that ORS 59.135 merely establishes a standard of conduct for claims pursued under ORS 59.115, ORS 59.137, and ORS 59.255. The elements of the causes of action under ORS 59.137 and ORS 59.115, and the requirements that must be established for enforcement actions brought by the Director of DCBS under ORS 59.255, are to be found in those statutes -- not in ORS 59.135. Consequently, even if the provisions of ORS 59.135 themselves do not support imposition of a reliance requirement, that is of no moment here, because the terms of ORS 59.135 do not establish all the necessary elements of a cause of action under ORS 59.137 or ORS 59.115, or the full range of requirements necessary for the Director of DCBS to pursue enforcement actions under ORS 59.255.

We determine, therefore, that whether ORS 59.135 itself contains a reliance requirement is not dispositive with respect to whether ORS 59.137(1) contains a reliance requirement. Thus, we find the state's contextual argument based on the terms of ORS 59.135 to be unavailing. Furthermore, we also decline to take the path that the Court of

of the State Treasury unless the court requires other disposition."

9

Appeals took in determining that ORS 59.135 itself does in fact contain a reliance requirement.

The state also contends that ORS 59.115(1)(b) provides additional context that shows that reliance is not a part of a claim under ORS 59.137(1). The state asserts:

> "ORS 59.115(1)(b) applies in direct transactions between a security purchaser and seller. The text of ORS 59.135(2) is functionally identical to the text of ORS 59.115(1)(b) (1983), which the Court of Appeals held *does not* contain a reliance requirement. *See Everts v. Holtmann*, 64 Or App 145, 152, 667 P2d 1028, *rev den*, 296 Or 120 (1983). Thus, this court may presume that when the legislature enacted ORS 59.137(1), that proof of a violation of ORS 59.135(2) would not require reliance in light of the long-established construction of a functionally identical statutory provision in *Everts*. *See In Re Weber*, 337 Or 55, 67, 91 P3d 706 (2004) ('[t]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes')."

(Footnote omitted.) There are, however, significant logical flaws embedded in the state's reliance on the provisions of ORS 59.115(1)(b)[5] as context for ORS 59.137(1).

---

[5]     ORS 59.115(1)(b) (1983) provided:

"Any person who:

"* * * * *

"(b) Offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable as provided in subsection (2) of this section to the person buying the security from him."

ORS 59.115(1)(b) now provides:

First, the state contends that ORS 59.115(1)(b) and ORS 59.135(2) are functionally identical. But as we have noted, ORS 59.135 does not establish the elements of a claim pursued under ORS 59.137(1). Consequently, whether the text of ORS 59.135(2) is functionally equivalent to the text of ORS 59.115(1)(b) does not determine what elements are necessary to establish a claim under ORS 59.137(1).

Furthermore, the text of ORS 59.115(1)(b) and ORS 59.135(2) are not functionally identical -- at least not with respect to how ORS 59.135(2) applies in this case. Here, ORS 59.135(2) is incorporated and made applicable through ORS 59.137(1). As discussed above, ORS 59.137(1) applies to claims for actual damages *caused by* a misrepresentation. ORS 59.115(1)(b) does not contain such terms. Moreover, as Marsh notes, ORS 59.115(2) -- which applies to representations made directly by a seller to a purchaser -- allows for recovery of the entire purchase price of a security sold in violation of that statute. Such recessionary relief is not the functional equivalent of a claim for actual damages like that provided in ORS 59.137(1).

"A person is liable as provided in subsection (2) of this section to a purchaser of a security if the person:

"* * * * *

"(b) Sells or successfully solicits the sale of a security in violation of ORS 59.135(1) or (3) or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."

11

Finally, ORS 59.115(1)(b) contains express terms that require that the buyer not know of the untruth or omission in a seller's statement. As Marsh notes, the requirement that the buyer not know of the untruth or omission means that a buyer who does have knowledge of the falsity or omission cannot recover any amount at all. There is no similar bar to a plaintiff's recovery under ORS 59.137(1). In our view, the dissimilarity between the two statutes actually supports a determination that reliance should be required for claims brought under ORS 59.137(1). If there is no reliance requirement for claims brought under ORS 59.137(1), nothing would prevent a plaintiff from purchasing a security knowing about a misrepresentation and then still being able to recover damages for any loss when and if the misrepresentation is made known publicly. That would stretch the statutory requirement that the damages to the plaintiff be "caused by" the actions of the security seller beyond what was intended by the legislature when it enacted ORS 59.137(1).

In sum, we conclude that many of the contextual arguments presented by the state are inapposite. Moreover, the relevant contextual clues we have described actually provide additional support for including a reliance requirement for claims brought under ORS 59.137.

Although this court has stated that analysis of the statutory text in context is primary, the court also has recognized that the proper analysis of statutory terms can be illuminated by reference to the legislative history of a statute. As we noted in *Gaines*, the court "remains responsible for fashioning rules of statutory interpretation that, in the court's judgment, best serve the paramount goal of discerning the legislature's intent."

12

346 Or at 171. And, as we also observed in *Gaines*, legislative history can confirm the plain meaning of statutory terms or show that superficially clear language is not as plain as first appears. *Id*. at 172. We now undertake an examination of the legislative history of the statutes involved to further inform our understanding of the legislature's intent in enacting the statutory terms at issue.

ORS 59.137 was enacted in 2003. One of the primary reasons that it was proposed to the Legislative Assembly was to expand the reach of Oregon's Securities Laws to security sales that were made in the open market. ORS 59.115 previously established a cause of action only for purchasers of stocks damaged by misrepresentations made in direct, face-to-face securities transactions. *See State Treasurer v. Marsh & McLennan Companies, Inc.,* 241 Or App 107, 114, 250 P3d 371 (2011) (noting that ORS 59.115 creates a cause of action for purchasers of stock who are damaged by misrepresentations in face-to-face securities transactions).

ORS 59.137 originated as Senate Bill 609 (2003).[6] The Staff Measure Summary for SB 609-A presented to the Senate Committee on Business and Labor on May 2, 2003, described the effect of the bill as follows:

---

[6] As the Court of Appeals correctly noted, ORS 59.137 began in the Senate as Senate Bill (SB) 609 (2003). After it passed the Senate, concerns about unintended consequences were raised by securities and corporate lawyers. *See* Testimony, House Committee on Rules and Public Affairs, HB 3666, Aug 14, 2003, Ex B (statement of N. Robert Stoll, Scott Shorr, Joseph Arellano, and Andrew Morrow). Slight changes to SB 609 were incorporated into House Bill (HB) 3666 (2003). HB 3666 was then introduced in the House, approved by the Legislative Assembly, and ultimately codified as ORS 59.137.

13

**"WHAT THE MEASURE DOES:** Specifies that person who offers security or offers to purchase security in violation of securities laws or by means of untrue statement or omission may be liable for damages. Allows investors to recover for damages involving fraud for securities purchased in open market. Sets three-year time limit on actions."

The Staff Measure Summary also provided the following by way of background information:

"The primary beneficiaries of extending the Oregon Securities Law (OSL) are the PERS and other public funds who purchase securities. Currently, a person or public fund may not bring a claim under the OSL against a fraudulent corporation, such as Enron, unless the securities were purchased directly from Enron.

"This bill permits a public fund or other investor to state a claim even when the securities were purchased in the open market. SB 609-A also creates consistency between Oregon law and corresponding federal laws."

The Staff Measure Summary explicitly described the bill as providing for claims by investors who purchased securities in the open market for damages based on fraud. Furthermore, as the Court of Appeals noted:

"The testimony before committees considering the bills that ultimately became ORS 59.137 (footnote omitted) contains repeated statements that the target of the statute is 'fraud' or 'fraudulent' conduct; nearly every person who testified used one or another of those terms.[7]

_____

"[7] Testimony, Senate Committee on Business and Labor, SB 609, Apr 7, 2003, Ex H (statement of Scott A. Shorr), Ex I (statement of Sen Kate Brown), Ex J (statement of Assistant Attorney General Frederick M. Boss), Ex K (statement of Floyd G. Lanter), Ex L (statement of Roger Martin); Testimony, Senate Committee on Business and Labor, SB 609, Apr 28, 2003, Ex A (statement of Scott A. Shorr); Testimony, House Committee on Judiciary, SB 609, May 16, 2003, Ex I (statement of Scott A. Shorr), Ex J (statement of Floyd G. Lanter); Testimony, House Committee on Rules and Public Affairs, HB 3666, Aug 14, 2003, Ex A (statement of Gary I. Grenley, Ex B (joint statement of N. Robert Stoll, Scott A. Shorr, Joseph Arellano, and Andrew Morrow); Testimony, Senate Committee on Rules, HB 3666, Aug 21, 2003, Ex I (joint statement of N. Robert Stoll,

14

Scott A. Shorr, Joseph Arellano, and Andrew Morrow), Ex L (statement of State Treasurer Randall Edwards)."

Most directly, the Administrator of the Department of Consumer and Business Services, Division of Finance and Corporate Securities, testified that one of the purposes of the bill was to ensure that "investors * * * have the right to bring so-called 'fraud-on-the-market' lawsuits when they buy stock on the open market in reliance on financial statements and similar information that turn out to have been fraudulent."  Testimony, Senate Committee on Business and Labor, SB 609, Apr 7, 2003, Ex K (statement of Floyd G. Lanter).

The legislative history surrounding adoption of ORS 59.137 is consistent and compelling.  It demonstrates that the legislative purpose in enacting ORS 59.137 was to provide for claims by investors who made purchases of securities on the open market and, as a result, suffered financial damages based on fraudulent conduct.  Although fraudulent conduct under the Oregon Securities Law need not have the precise contours of common-law deceit for all purposes,[7] a claim under ORS 59.137 for damages caused by the perpetrator's conduct necessarily includes reliance in some form on that conduct

---

[7]     ORS 59.015 provides, in part:

"As used in the Oregon Securities Laws, unless the context otherwise requires:

"* * * * *

"(6) 'Fraud,' 'deceit' and 'defraud' *are not limited to common-law deceit*."

(Emphasis added.)

15

by the person asserting the claim.

Based on our review of the text, context, and legislative history, we determine that a purchaser of securities on the open market must establish some form of reliance on misrepresentations made by the defendant in order to establish a claim for damages under ORS 59.137. We now turn to whether that reliance can be established for purposes of Oregon Securities Law by purchasers of securities on the open market through the "fraud-on-the-market" presumption that has been recognized in the federal courts.

FRAUD-ON-THE-MARKET

Before deciding whether the "fraud-on-the-market" presumption is available for claims brought under Oregon Securities Law, we first describe the doctrine in general terms, as it has been developed and accepted under federal securities law.

The fraud-on-the-market doctrine was adopted by the United States Supreme Court in *Basic Inc. v. Levinson*, 485 US 224, 108 S Ct 978, 99 L Ed 2d 194 (1988). In *Basic Inc.*, the Court addressed claims brought under the Securities and Exchange Commission's Rule 10b-5, promulgated under § 10(b) of the Securities Exchange Act of 1934. The Court endorsed the fraud-on-the-market doctrine in the following terms:

"We turn to the question of reliance and the fraud-on-the-market theory. Succinctly put:

"The fraud-on-the-market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. * * * Misleading statements will therefore defraud

16

purchasers of stock even if the purchasers do not directly rely on the misstatements. * * * The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant, than in a case of direct reliance on misrepresentation. *Peil v. Speiser*, 806 F2d 1154, 1160-1161 (CA3 1986).

"* * * * *

"We agree that reliance is an element of a Rule 10b-5 cause of action. *See Ernst & Ernst v. Hochfelder*, 425 U.S., at 206 (quoting Senate Report). Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury. *See, e.g., Wilson v Comtech Telecommunications Corp.*, 648 F2d 88, 92 (CA2 1981); *List v. Fashion Park, Inc.*, 340 F2d 457, 462 (CA2), *cert denied sub nom. List v. Lerner*, 382 US 811 (1965). There is, however, more than one way to demonstrate the causal connection. * * *

"The modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases, (footnote omitted) and our understanding of Rule 10b-5's reliance requirement must encompass these differences. (Footnote omitted.) * * *

"* * * The courts below accepted a presumption, created by the fraud-on-the-market theory and subject to rebuttal by petitioners, that persons who had traded Basic shares had done so in reliance on the integrity of the price set by the market, but because of petitioners' material misrepresentations that price had been fraudulently depressed. Requiring a plaintiff to show a speculative state of facts, *i.e.*, how he would have acted if omitted material information had been disclosed, *see Affiliated Ute Citizens of Utah v. United States*, 406 US at 153-154, or if the misrepresentation had not been made, *see Sharp v. Coopers & Lybrand*, 649 F2d 175, 188 (CA3 1981), *cert. denied*, 455 US 938 (1982), would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market. *Cf. Mills v. Electric Auto-Lite Co.*, 396 US, at 385.

"Arising out of considerations of fairness, public policy, and probability, as well as judicial economy, presumptions are also useful devices for allocating the burdens of proof between parties. *See* E. Cleary, McCormick on Evidence 968-969 (3d ed. 1984); *see also* Fed Rule Evid 301 and Advisory Committee Notes, 28 US C App, p. 685. The presumption of reliance employed in this case is consistent with, and, by facilitating Rule 10b-5 litigation, supports, the congressional policy

17

embodied in the 1934 Act. In drafting that Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets. * * *

"* * * The presumption is also supported by common sense and probability. Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence any material misrepresentations. (Footnote omitted.) * * * It has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?' *Schlanger v. Four-Phase Systems, Inc.*, 555 F Supp 535, 538 (SDNY 1982)."

*Basic Inc.*, 485 US at 241-49.

The United States Supreme Court has reaffirmed the fraud-on-the-market doctrine numerous times. *See, e.g., Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 US 286, 295, 113 S Ct 2085, 124 L Ed 2d 194 (1993) (citing to *Basic Inc.* for reliance requirement under SEC Rule 10b-5); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 US 164, 180, 114 S Ct 1439, 128 L Ed 2d 119 (1994) (same). In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 US 336, 341, 125 S Ct 1627, 161 L Ed 2d 577 (2005), the Court expounded on the private federal securities fraud actions based on Section 10b of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in the following terms:

"In cases involving publicly traded securities and purchases or sales in public securities markets, the action's basic elements include:

"(1) *a material misrepresentation (or omission), see Basic Inc. v. Levinson*, 485 US 24, 231-232, 108 S Ct 978, 99 L Ed 2d 194 (1988);

"(2) *scienter*, *i.e.*, a wrongful state of mind, *see Ernst & Ernst, supra*, at 197, 199, 96 S Ct 1375;

18

"(3) *a connection with the purchase or sale of a security, see Blue Chip Stamps, supra*, at 730-731, 95 S Ct 1917;

"(4) *reliance*, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation, *see Basic, supra*, at 248-249, 108 S Ct 978 (nonconclusively presuming that the price of a publicly traded share reflects a material misrepresentation as long as they would not have bought the share in its absence);

"(5) *economic loss*, 15 USC §78u-4(b)(4); and

"(6) '*loss causation*,' *i.e.*, a causal connection between the material misrepresentation and the loss, *ibid.*;"

*See also Matrixx Initiatives, Inc. v. Siracusano*, ___ US ___, 131 S Ct 1309, 179 L Ed 2d 398 (2011) (reaffirming fraud-on-the-market doctrine generally); *Erica P. John Fund, Inc. v Haliburton Co.*, ___ US ___, 131 S Ct 2179, 180 L Ed 2d 24 (2011) (specifically reaffirming fraud-on-the-market doctrine as to causation and reliance).

This consistent line of decisions by the United States Supreme Court is telling. We think it significant that that Court has held, since its decision in *Basic Inc.* in 1988, that reliance can be established in SEC Rule 10b-5 claims through the fraud-on-the-market doctrine. Furthermore, although the fraud-on-the-market presumption originated in class action cases, the federal courts have applied it to claims brought by individual investors. *See, e.g.*, *Black v. Finantra Capital, Inc.*, 418 F3d 203, 209 (2d Cir 2005) (applying the fraud-on-the-market presumption of reliance to an individual stock purchase); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F2d 522, 529 (7th Cir 1985) (same).

As a matter of timing, *Basic Inc.* was decided by the United States Supreme Court in 1988, and ORS 59.137 was enacted by the Oregon Legislative Assembly in

19

2003. Consequently, by the time the Oregon legislature enacted ORS 59.137, the fraud-on-the-market doctrine had been part of the federal law landscape for 15 years.

The legislative history confirms that SB 609, now codified as ORS 59.137, was intended to create consistency between Oregon and federal securities law. Then-Senator Kate Brown introduced SB 609 in the 2003 legislative session. She submitted written testimony to the Senate Committee on Business and Labor in support of SB 609 asserting:

> "SB 609 clarifies and extends the Oregon Securities Law. Currently, state funds may not be able to bring a claim against a fraudulent corporation unless the state fund purchased securities directly from the corporation or in a new offering. SB 609 allows defrauded investors to recover damages when investors purchase stock in the 'open market.'
>
> "* * * * *
>
> "SB 609 allows for these 'fraud-on-the-market' claims and would make Oregon law consistent with the federal statutes that allows for these claims."

Testimony, Senate Committee on Business and Labor, SB 609, Apr 7, 2003, Ex I (statement of Sen Kate Brown).

Scott A. Shorr, one of the proponents of the bill, provided additional testimony that echoed that provided by Senator Brown. Mr. Shorr's written testimony also stated that:

> "SB 609 clarifies and extends the Oregon Securities Laws to allow an investor which is damaged by fraud to recover its losses when the investor purchased its stock in the 'open market.' The amendment would allow for so-called 'fraud-on-the-market' claims and would make Oregon law consistent with the corresponding federal statute that allows for such claims."

Testimony, Senate Committee on Business and Labor, SB 609, Apr 7, 2003, Ex H

20

(statement of Scott A. Shorr).

Floyd G. Lanter, Administrator of the Division of Finance and Corporate Securities of the Department of Consumer and Business Services, provided similar testimony. Mr. Lanter stated:

> "In general, we agree with the sponsors of this bill that investors should be able [to] bring suits to recover their losses not only from the company that issued the stock or the person who had title to the investment but also from those persons who facilitate and promote the stock sale and who make their living by sales commissions. We also believe investors should have the right to bring so-called 'fraud-on-the-market' lawsuits when they buy stock on the open market in reliance on financial statements and similar information that turn out to have been fraudulent."

Testimony, Senate Committee on Business and Labor, SB 609, Apr 7, 2003, Ex K (statement of Floyd G. Lanter).

Marsh contends that these statements evince nothing more than an intent that the bill would extend the reach of Oregon Securities Laws to purchases made in the open, or secondary, markets such as the New York Stock Exchange -- as opposed to face-to-face transactions -- but not to incorporate the fraud-on-the-market doctrine. The Court of Appeals agreed with that reading of the legislative history, finding that the statements in the legislative record merely expressed an intent to provide a cause of action for investors who are defrauded when they purchase securities in non-face-to-face transactions, as they normally do in "open market" purchases. According to Marsh and the Court of Appeals, the open market stock purchaser still would be required to prove direct reliance on a misrepresentation by the defendant. We disagree.

First, the testimony outlined above is replete with references to fraud-on-

the-market claims. It is significant that numerous witnesses, including the legislator who introduced and carried the bill, used the same particular and rather unique phrase to describe the effects of the bill. The phrase "fraud-on-the-market" is a specific enough term that, even if it does not constitute a legal term of art, it conveys more than simply expanding available state law claims to non-face-to-face transactions. Unlike the Court of Appeals, we conclude that the legislative history amply supports the determination that the legislature intended to incorporate the fraud-on-the-market doctrine recognized under federal securities law when it enacted ORS 59.137.

Second, our conclusion is bolstered by the undisputed fact that the intent and effect of enacting ORS 59.137 was to expand the Oregon Securities Law and make it consistent with the federal securities law. We have consistently held that when the Oregon legislature adopts a statute modeled on a statute from another jurisdiction, the then-existing interpretation of that statute by the highest court of that jurisdiction manifests the interpretation intended to apply here. *See State v. Cooper,* 319 Or 162, 167-68, 874 P2d 822 (1994) ("When the Oregon legislature adopts a statute modeled after another jurisdiction, an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon is considered to be the interpretation of the adopted statute that the Oregon legislature intended.") (Citation omitted.) For the Oregon Securities Law to be consistent with the corresponding federal securities law, the 2003 Oregon legislature must have intended that fraud-on-the-market claims that had been recognized since 1988 by the United States Supreme Court under federal securities law be incorporated into Oregon law.

22

Third, our conclusion is fully consistent with the terms of ORS 59.137 enacted by the Oregon legislature. In ORS 59.137(1), the Legislative Assembly provided that a company is liable to purchasers of its stock on the open market for actual damages "caused by" misrepresentations made by the company. In *Basic Inc.*, the Court reasoned that:

> "The fraud-on-the-market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. * * * Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. * * * The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant, than in a case of direct reliance on misrepresentation."

*Basic Inc.*, 485 US at 241-42 (quoting *Peil v. Speisoy*, 806 F2d 1154, 1160-61 (CA3 1986)).

We conclude that, in recognizing claims under Oregon law for damages to open market stock purchasers "caused by" misrepresentations by companies whose stock is sold on the open market, the Oregon Legislative Assembly intended that the causal connection in such sales could be established through the use of the fraud-on-the-market doctrine. In other words, we understand that in recognizing claims by open market stock purchasers, the Oregon legislature also provided the means of proving such claims when the stock purchases were made in non-face-to-face transactions on the open market -- and we further understand that the Oregon legislature intended to adopt as one of the available means the fraud-on-the-market doctrine that the federal courts had provided under federal securities law since 1988. To conclude otherwise would be to interpret the

23

terms of ORS 59.137 enacted by the Legislative Assembly in a restrictive manner when the unquestioned intent of the legislature was to expand the reach of the Oregon Securities Law to make it consistent with federal securities law.[8]

Marsh asserts, however, that other state courts have not endorsed the fraud-on-the-market doctrine under their state securities laws. Each state court, of course, must address the issue as a matter of statutory interpretation under its particular statutory scheme using its own method of statutory interpretation. As we have set out above, we reach our determination that the fraud-on-the-market presumption applies under Oregon securities laws by applying our own well-established method of interpreting Oregon statutory law. The fact that other state courts have not determined that the fraud-on-the-market doctrine applies under their own state laws provides little reason for us to follow that same path here in Oregon.

OMISSION

Finally, we turn to the state's argument that a stock purchaser should not

---

[8]    Marsh asserts that the trial court found that, even if the rebuttable presumption based on the fraud-on-the-market doctrine was applicable, Marsh rebutted the presumption through evidence presented to the trial court. Marsh contends that the state does not challenge that ruling in this court. The state counters by noting that the state argued to the Court of Appeals that Marsh did not rebut the presumption and that the state should not be determined to have waived that argument, because the Court of Appeals did not reach that issue due to its determination that Oregon law does not provide for consideration of the fraud-on-the-market presumption. We agree that the state has not waived its challenge to the trial court's finding that Marsh adequately rebutted the fraud-on-the-market presumption. That issue should be addressed by the parties and the Court of Appeals on remand.

24

have to prove reliance in claims alleging that a company has omitted stating material facts about the security. The state relies primarily on the United States Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 US 128, 92 S Ct 1456, 31 L Ed 2d 741 (1972). In *Affiliated Ute Citizens*, the Court held that a plaintiff need not provide direct proof of reliance under SEC Rule 10b-5, where the defendant has made statements with material omissions of fact:

> "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite for recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."

406 US at 153-54.

We decline to reach that issue because we conclude that this is not an "omission" case. The state pleaded its case primarily as a misrepresentation case. The state presented the omission theory only as an adjunct theory of liability based on the failure to disclose the misrepresentations.[9] Furthermore, the state presents its omission argument to this court only as an alternative ground for disposition. The state asserts:

> "As a final matter, if this court concludes that ORS 59.137(1) contains a reliance requirement and that the 'fraud-on-the-market' doctrine is not available under state law, this court must consider whether reliance is necessary when a violation of ORS 59.135(2) is premised on the omission of material facts in a statement about a security."

---

[9] *See Beck v. Cantor, Fitzgerald & Co., Inc.*, 621 F Supp 1547, 1556 (ND Ill 1985) (rejecting *Ute* because, through clever pleading, "[e]very fraud case based on material misrepresentation could be turned facilely into a material omissions case, and * * * avoid the necessity of pleading and proving reliance * * *.").

25

As we have concluded, the fraud-on-the-market claim is available and must be addressed and resolved on remand.  Resolution of the issue whether reliance is required in an "omission" case should be addressed in a true omission case, when the issue is directly presented factually and the issue is fully briefed by the parties involved.  Consequently, we decline to reach that issue here.

CONCLUSION

We conclude that claims based on misrepresentations that are brought under ORS 59.137 require a stock purchaser to establish reliance on those misrepresentations.  However, we also conclude that the requisite reliance may be established by a plaintiff who purchases stock in an open and efficient market by means of the rebuttable presumption available under the fraud-on-the-market doctrine.  The trial court and the Court of Appeals erred in concluding otherwise.  Accordingly, we reverse the summary judgment entered in Marsh's favor on that ground and remand to the Court of Appeals for further proceedings.[10]

---

[10]    In the Court of Appeals, the state assigned error to the trial court's determination that ORS 59.137 is unconstitutional because it does not contain a requirement that the defendant act with *scienter* to be found liable.  The parties addressed that determination in their briefing in the Court of Appeals.  The Court of Appeals did not reach that issue, however, because it decided the case on the subconstitutional ground that the state failed to establish actual reliance under ORS 59.137.  Neither party addressed the constitutional issue in their briefing before this court.  Because we conclude that the Court of Appeals erred in determining that the state is required to establish actual reliance under the statute, we remand this case to the Court of Appeals.  On remand, the Court of Appeals can reach and address the constitutional claim.  *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 150-51, 241 P3d 710 (2010).

26

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.