Submitted April 30, 2012, reversed and remanded September 5, 2013, petition for review allowed January 30, 2014 (354 Or 735)

MICHAEL W. JENKINS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A144545

309 P3d 1115

Peter Gartlan, Chief Defender, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Nakamoto, Judge.

NAKAMOTO, J.

Armstrong, J., dissenting.

**NAKAMOTO, J.**

On judicial review of a final order of the Board of Parole and Post-Prison Supervision (the board) postponing his scheduled release date from prison under ORS 144.125(3), petitioner asserts that the order is not supported by substantial evidence and reason. The board contends that the first sentence of ORS 144.335(3), added in 1999, excuses the board from a substantial-reason requirement. We conclude that the board's reading of the statute runs counter to its text, context, and legislative history. As we did in *Castro v. Board of Parole*, 232 Or App 75, 220 P3d 772 (2009), we hold that ORS 144.335(3) requires the board to provide an inmate with some explanation of the rationale for concluding that the inmate's parole date should be postponed. Thus, we reverse the board's order for lack of substantial reason and remand.

After holding an exit interview with petitioner, the board issued an order postponing petitioner's scheduled parole release date for 24 months pursuant to ORS 144.125(3)(a). That statute authorizes the board to defer parole release dates for inmates who suffer from a present severe emotional disturbance (PSED).[1] The board's order states, in pertinent part:

"The record indicates that the offender committed his/her crime(s) prior to/on or after 05/19/1988.

"The board has received a psychological evaluation on inmate dated 06/30/2008.

"Based on the doctor's report and diagnosis, coupled with all the information that the board is considering, the board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to

---

[1] ORS 144.125(3)(a) provides:

"If the board finds the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release until a specified future date. The board may not postpone a prisoner's scheduled release date to a date that is less than two years, or more than 10 years, from the date of the hearing, unless the prisoner would be held beyond the maximum sentence. The board shall determine the scheduled release date, and the prisoner may petition for interim review, in accordance with ORS 144.280."

the health or safety of the community. The board has considered this matter under the laws in effect at the time of the commitment offense(s) and all other applicable rules and laws.

"The board defers release date for 24 months for a projected parole release date of 03/05/2011, for a total of 378 months. A review will be scheduled in 09/2010 with a current psychological evaluation."

(Capitalization altered.)

On judicial review, petitioner contends that the board was required, but failed, to explain its reasoning as to its two conclusions, namely, (1) that he suffered from a PSED that made him a danger to the community and (2) that his scheduled release date should be deferred. He first asserts that the order's deficiency violates the requirement in ORS 144.135, which requires the board to "state in writing the detailed bases of its decisions" regarding parole release dates.[2] Second, he relies on a subsection of the Oregon Administrative Procedures Act (APA), ORS 183.482(8)(c), made applicable to our review of board orders under ORS 144.335(3), that a reviewing court "shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record." Third, he argues that we must reverse based on our decision in *Castro*, in which we held that the board's orders must demonstrate substantial reason.

The board contends that *Castro* is not controlling because in that case we did not address the 1999 amendment to ORS 144.335(3) that, in its view, exempts the board from providing substantial reason for its decisions. That amendment resulted in what is now the provision's first sentence: "The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority." Given the state's contention that *Castro* does not control this case, we begin with a review of our decision in *Castro*.

---

[2] Petitioner also asserts that the order is so deficient that it violates his due process rights under the Fourteenth Amendment to the United States Constitution. We do not reach that argument because we agree with petitioner as to the statutory requirements for substantial evidence and substantial reason in the board's orders.

As in this case, the petitioner in *Castro* challenged the board's order postponing his parole release date on judicial review by arguing that the order was not supported by substantial evidence and reason. 232 Or App at 77. We held that ORS 144.335(3) requires review for substantial evidence and reason. *Id.* at 83. We noted that the second sentence of the statute plainly states that "this court 'may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8).'" *Id.* at 82. And, we noted that ORS 183.482(8)(c), in turn, provides that:

> "The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

*Id.* at 82-83 (internal quotation marks omitted). We stated that ORS 183.482(8)(c) requires "[s]ubstantial evidence review" and "requires that the board provide 'some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached.'" 232 Or App at 83 (quoting *Martin v. Board of Parole*, 327 Or 147, 157, 957 P2d 1210 (1998)). The *Martin* case on which we relied involved a challenge to the board's order imposing a special condition of post-prison supervision, but construed a statutory requirement that, like the second sentence of ORS 144.335(3), provided for court review of the order "on the same basis as provided in ORS 183.482(8)." *Martin*, 327 Or at 149, 155 (internal quotation marks omitted).

We reversed and remanded in *Castro*, agreeing with the petitioner that the board's order stated a mere conclusion and "that this case falls into the category that, under *Armstrong* [*v. Asten-Hill Co.*, 90 Or App 200, 752 P2d 312 (1988)], requires the board to demonstrate its reasoning." *Id.* at 85. We explained that the relevant portion of the board's order

> "is an announcement, not an explanation. It gives us nothing to judicially review. Our duty is to evaluate the board's logic, not to supply it. *Drew*, 322 Or at 499-500 (review for substantial reason is based on the order itself, not our independent review of the record). We must therefore reverse and remand."

*Id*. at 85-86. Thus, *Castro* requires that we review the board's orders for substantial evidence and substantial reason.

We disagree with the board that ORS 144.335(3) must be read to exempt the board's orders from judicial scrutiny for substantial reason in light of the 1999 amendment and that we must overrule *Castro* because we did not consider the effect of the 1999 amendment in our analysis of the statutory requirements for board orders. Both the text and context of ORS 144.335(3) compel us to hold the board to the APA's requirements of substantial evidence and reason for orders pursuant to ORS 183.482(8)(c), and our reading of the text is supported by the legislative history. Contrary to the board's argument, we conclude that *Martin* and *Castro*, as well as *Gordon v. Board of Parole*, 343 Or 618, 175 P3d 461 (2007), control in this case.

To "pursue the intention of the legislature if possible," ORS 174.020(1)(a), we begin with the text and context of ORS 144.335(3) and then examine the legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). The full text of ORS 144.335(3) states:

> "The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority. The Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

The text of ORS 144.335(3) contradicts the board's position. The second sentence of ORS 144.335(3) plainly states that our court "may affirm, reverse or remand the order *on the same basis as provided in ORS 183.482(8)*." (Emphasis added.) As we recognized in *Castro*, given that second sentence, ORS 144.335(3) requires us to review the board's order for substantial evidence and reason—requirements under ORS 183.482(8). 232 Or App at 82-83; *see also Martin*, 327 Or at 157 ("[T]he requirement of *some kind of an explanation* connecting the facts of the case (which

would include the facts found, if any) and the result reached by an agency is a requirement of ORS 183.482(8), as that section has been construed authoritatively by this court." (Emphasis added.)).

Our holding in *Castro* is consistent with the Supreme Court's construction of ORS 144.335(3). In its relatively recent 2007 decision in *Gordon,* a case involving the board's postponement of another inmate's parole date on the basis of severe emotional disturbance, the Supreme Court explained that the "standards of review set out in ORS 183.482(8) reflect a legislative policy, embodied in the APA, that decisions by administrative agencies be rational, principled, and fair, rather than *ad hoc* and arbitrary." 343 Or at 633. The court therefore reviewed the board's order "to determine if the board's findings, reasoning, and conclusions demonstrate that it acted in a rational, fair, and principled manner in deciding to defer petitioner's parole release." *Id.* at 634.

Contrary to the board's reading, the first sentence of ORS 144.335(3) does not necessarily contradict the text of the second sentence. The first sentence states that an "order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority." The sentence appears directed to the sufficiency of an order for judicial review, *i.e.,* the elements of the order. The text of the first sentence appears to echo the Supreme Court's emphasis in *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 21, 569 P2d 1063 (1977), which in part challenged the adequacy of a final decision of a local government in a contested land use proceeding:

> "No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient."

In other words, basic elements of the order must be present for review.

In 1999, when the first sentence was added, the board was exempt from the APA requirement in ORS 183.470(2)[3] that an agency prepare orders with *"specific findings of fact and conclusions of law"* in contested cases. *Martin,* 327 Or at 155 (emphasis added); *see also* ORS 183.315(1) ("The provisions of ORS *** 183.470 *** do not apply to *** [the] State Board of Parole and Post-Prison Supervision."). The first clause of that sentence—the board's orders "need not be in any special form"—is consistent with and reaffirms the board's exemption from having to provide specific findings of fact and conclusions of law in orders and its freedom to develop efficiencies in the forms of its orders to deal with its caseload. The second clause is less clear, stating that an order is sufficient for review if "it appears" that the board "acted within the scope of [its] authority." Nevertheless, the text suggests that an order, *on its face,* should reflect to the reviewing court a proper basis for the board's decision. How else does an order reflect that the board acted within the scope of its authority if not through some sort of explanation of the grounds for the decision and why the board determined that the grounds exist?

Under the board's reading of the statute, a reviewing court would have to *search the record,* not the order, to determine whether the order reflects that the board acted within its authority. That follows from the board's position that it does not have to tell the inmate or anyone else why it concludes that a statutory basis for postponing the inmate's parole release date exists. If that is the case, the only way this court or any reviewing court can discern whether and to what degree the evidence contradicts the board is for the inmate and the court to painstakingly go through the record.

Our reading of the first and second sentences gives effect to both, in accordance with our normal approach in legislative construction to try to give effect to all parts of a

---

[3] ORS 183.470(2) states that, in a contested case, a final order

"shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

statute. *See* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *Force v. Dept. of Rev.*, 350 Or 179, 190, 252 P3d 306 (2011) ("Statutory provisions, however, must be construed, if possible, in a manner that will give effect to all of them." (Internal quotation marks omitted.)). To accept the board's construction would be to effectively write the second sentence out of ORS 144.335(3). Even assuming that the board's reading of ORS 144.335(3) is "textually permissible, the better interpretation is the one that gives full effect to all the terms" of the statute. *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 240, 264 P3d 1265 (2011).

We also consider the statute's context. The context of a statute allows a reviewing court to "construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole." *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997). Context of a disputed statute includes "the preexisting common law and the statutory framework within which the law was enacted." *Klamath Irrigation District v. United States*, 348 Or 15, 23, 227 P3d 1145 (2010). Thus, we can review "other provisions of the same statute, the session laws, and related statutes" for context. *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004). The context of ORS 144.335(3) supports a reading that requires the board to provide some explanation in its order and undercuts the board's reading of the provision to allow the board simply to state a statutory ground for its decision.

Although the legislature amended ORS 144.335(3) by adding its first sentence in 1999, the legislature did not remove or amend the second sentence, which, again, provides that "[t]he Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8)." And, the legislature well understood that review "as provided in ORS 183.482(8)" referred to substantial-reason review, as the Supreme Court had held. *See Martin*, 327 Or at 157; *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996). The legislature's retention of the second sentence in 1999, despite the fact that appellate courts had said that it requires substantial-reason review, read together with

the first sentence, indicates that the legislature intended to retain a requirement for the board's orders to provide some explanation of reasoning sufficient for substantial-reason review, even though it need not be in a special form.

We also find context that supports that reading of ORS 144.335(3) in related statutes and rules. Of particular relevance is ORS 144.135, which requires the board to "state in writing the detailed bases of its decisions" regarding parole release dates. That, too, has never been removed, despite the 1999 amendment of ORS 144.335(3). Two terms in ORS 144.135 provide insight as to the requirements of the board's orders: "detailed" and "decision." Because the legislature did not define either of those two terms, their ordinary meaning is instructive. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The noun "decision" means "an account or report of a conclusion." *Webster's Third New Int'l Dictionary* 585 (unabridged ed 2002). The adjective "detailed" is defined as "marked by abundant detail or by thoroughness in treating small items or parts," and "detail," in turn, means "a particularized account." *Webster's* at 616. Thus, the requirement in ORS 144.135 that the board's order state the "detailed bases of its decision[ ]" may be characterized as prescribing some particularized account of the bases of its conclusion, not merely a conclusory statement referring to the entire record.

One of the board's own rules affirms that understanding of ORS 144.135. Its rule pertaining to postponement orders like the one at issue in this case is OAR 255-060-0013, which provides:

"Any order regarding the postponement of parole release shall be sent to the prisoner and shall set forth:

"(1)    The facts and specific reasons for the decision and the individual votes of the Board members.

"(2)    Notice of the right to administrative appeal pursuant to the procedures of division 80."

The rule was in effect in 1999. Thus, the board then and now has itself recognized its obligation to provide an inmate with "facts and specific reasons" for a decision that results in postponement of the inmate's parole release date.

In addition, under existing case law at the time of the 1999 amendment, it had been evident for years that some explanation of the basis for the decision beyond a mere conclusion was required in the board's orders. Even before *Martin*, we had held more than once that the purpose of requiring the board to provide an explanation of how the board reached a decision is so that we can review the basis for the board's action. *See Harris v. Board of Parole*, 47 Or App 289, 614 P2d 602, *rev den*, 291 Or 504 (1980). In *Harris*, we observed that, under the matrix system in effect, the board, and not a judge, "has the power to determine how long a person will be in prison." *Id.* at 301. We emphasized that the board is required under ORS 144.135 to state the "detailed bases of its decisions." *Id.* (internal quotation marks omitted). In light of that fact, we saw "no reason why more should be required of a trial judge than of the [b]oard" and that "[n]either the order before us, nor the rules, tell us why [the] petitioner was subjected to enhanced punishment." *Id.* Thus, having "no basis to determine" the reasons for the board's action, we reversed. *Id.*; *see also Moore v. Ore. State Bd. of Parole*, 54 Or App 369, 374, 635 P2d 3 (1981) ("When the Board deviates from the matrix range for unusual aggravating circumstances which have not been anticipated or described in the Board's own rules, something more than a conclusory statement * * * is required." (Emphasis omitted.)).

The case law also suggested that the level of detail the board was required to provide varied, depending on the type of decision the board was making. *See, e.g., Anderson v. Board of Parole*, 303 Or 618, 740 P2d 760 (1987). In that case, the Supreme Court examined whether the board's written order not to override the court-imposed minimum sentence when setting the petitioner's initial parole release date satisfied the requirements of ORS 144.135. 303 Or at 621. The court explained that, based on the board's own rule requiring the affirmative vote of at least four board members to override a minimum sentence, the board is not required to

"state the facts and reasons for its actions in *not* overriding the minimum term. * * * We interpret the rule to require the Board to state the facts and reasons for its actions *only* when four members of the Board find applicable one or more of the three categories"

listed in its own rule. *Id.* at 625 (emphasis added). The court concluded that no purpose would be served by requiring the board members to state their individual reasons for not voting to override the minimum sentence. *Id.* at 626.

We conclude that the context of the 1999 amendment to ORS 144.335(3) strongly suggests that the amendment did not change the requirement that we review the board's orders for substantial reason. The legislature's addition of the ambiguous first sentence does little to overcome the holdings in *Martin* and other cases that had been decided by 1999 and the text and context of the statute. Had the legislature intended to actually omit "substantial reason" review, it could and should have said so, as was proposed in the original version of Senate Bill (SB) 401, the bill introduced in 1999 in response to *Martin*. The initial version of SB 401 expressly stated that a covered agency need not "explain how the agency's order is supported by the facts and the evidence in the record."

Although the Supreme Court has stated that "analysis of the statutory text in context is primary," the court "also has recognized that the proper analysis of statutory terms can be illuminated by reference to the legislative history of a statute." *State Treasurer v. Marsh & McLennan Companies, Inc.*, 353 Or 1, 12, 292 P3d 525 (2012). Other parts of the legislative history of SB 401 further support our reading of ORS 144.335(3).

The Oregon Department of Justice (DOJ) initiated the introduction of SB 401 after, and in response to, the Supreme Court's decision in *Martin*. That bill would have amended ORS 183.482(8) in the APA to allow all agencies exempt from providing specific findings of fact and conclusions of law to also be exempt from having to "explain how the agency's order is supported by the facts and evidence in the record." In other words, the orders of a number of agencies, including the board, would not be subject to the substantial-reason requirement.

The judicial branch—the Oregon Judicial Department (OJD)—opposed SB 401. James Nass, Appellate Legal Counsel for the Oregon Supreme Court and Court of Appeals,

testified that the board, and other agencies exempt from preparing formal factual findings and legal conclusions, should not be "totally exempt from providing some kind of reasoned explanation in their orders when the order comes before a court for judicial review." Testimony, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Ex C (statement of James W. Nass, Appellate Legal Counsel for the Oregon Supreme Court and Court of Appeals). OJD offered a proposed amendment that would gut SB 401 and replace its contents with a procedure within the APA that would allow such agencies, upon the filing of a petition for judicial review of an order and if needed, to issue a new order that "contains an explanation that connects the facts found by the agency with the result reached by the agency." *Id.* At the first public hearing on SB 401 before the Senate Judiciary Committee, Nass explained that it was not always clear to a reviewing court what the board considered to be the evidence in support of its order, even by reading the record. Tape Recording, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Tape 27, Side A (statement of James W. Nass). Nevertheless, SB 401 with some amendments (not the amendment proposed by OJD) was moved from the committee to the Senate floor. Minutes, Senate Committee on Judiciary, SB 401, Feb 18, 1999.

When the bill moved to the House of Representatives, DOJ and OJD again took opposing positions on SB 401. Minutes, House Committee on Judiciary, SB 401, Mar 17, 1999. OJD's opposition to the bill was even more vociferous. Nass told the House Committee on Judiciary that SB 401 is "bad public policy" and "will decrease the quality of judicial review of certain agency orders" and "tend to increase the work load of the appellate courts." Testimony, House Committee on Judiciary, SB 401, Mar 17, 1999, Ex E (statement of James W. Nass). In no uncertain terms, OJD condemned the bill:

> "There is nothing subtle about this bill. The bill starkly presents this policy issue: Should any governmental agency be exempt from explaining how its decisions are supported by the evidence in the record? Apparently these Boards would say yes. Under SB 401, their motto would be:

> "'We're the Board. We don't have to explain nothing to nobody.'

"According to these Boards, they shouldn't have to explain their decisions to inmates whose fates lie in their hands. No problem there, of course, because few people have sympathy for criminals. But, this bill also means that the Boards would not have to explain their decisions to victims or victims' families. They wouldn't have to explain their decisions to the media. They wouldn't have to explain their decisions to any legislator who might be interested in a particular case. And, they wouldn't have to explain their decisions to the courts to aid in judicial review of those decisions. * * *"

*Id.*

Later, the bill was radically changed so that, as signed into law, it only added what is now the first sentence to ORS 144.335(3). Or Laws 1999, ch 618, § 1. DOJ explained to a House subcommittee that, in light of disagreement between OJD and DOJ on "the wisdom of the original proposal" in SB 401, Oregon's Attorney General, the Chief Justice of the Supreme Court, and Justice Gillette, the author of *Martin*, "worked out" the "alternative language" and that it is "fair to say that everyone is satisfied with this now." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, SB 401, June 1, 1999, Tape 185, Side A (statement of Assistant Attorney General Christine Chute).

When the bill was before the House, Representative Bowman asked "whether or not this bill would limit the information that inmates would receive as they are talking to the parole board about what they need to do to be released." Tape Recording, House Floor, SB 401, June 11, 1999, Tape 113, Side B (statement of Rep Jo Ann Bowman). Representative Shetterly responded: "No, it does not limit the information that inmates are to receive. This bill deals only with the form of orders that would be transmitted from the case to the Court of Appeals for the purpose of judicial review." Tape Recording, House Floor, SB 401, June 11, 1999, Tape 113, Side B (statement of Rep Lane Shetterly).

Thus, the judicial branch strongly opposed SB 401 in its original form and pressed the public policy reasons and the practical need for some explanation by the board for a court to meaningfully assess one of the board's orders

without a searching review of the entire record. We conclude from the sparse legislative history that the amendment to ORS 144.335(3) did not change the requirement that an order of the board must contain enough information to allow a court to review it. OJD would not have been satisfied with an amendment that got rid of the requirement for some explanation of a decision in the board's orders; OJD, it appears, agreed in a compromise that the board could present the bare minimum in an order that would allow meaningful judicial review, in whatever fashion the board deemed appropriate. *See Gordon*, 343 Or at 634 (holding that appellate courts review the board's reasoning in its orders). Representative Shetterly's statement assuring the representative from Northeast Portland, Representative Bowman, that there would be no change in the information inmates would receive so that they could understand what they needed to do to be released from prison also is consistent with that view of the amendment.

That view of the legislative history is also consistent with the textual analysis in context, including the continued inclusion of the second sentence in ORS 144.335(3) requiring review of the board's orders for substantial reason. As noted earlier, the text of the amendment can be read to require that the order itself, not a review of the record, must establish that the board's decision is in line with the "scope of [its] authority." Taken together, the text, context, and legislative history lead to the conclusion that, although no particular form of order is required, the board must provide some explanation connecting key facts or at least portions of the record to the board's conclusion, and, as noted earlier, the level of detail in the explanation may vary depending on the conclusion the board must justify.

We now apply that requirement to this case. The key portion of the board's order states that, under the laws in effect at the time petitioner committed his offenses, "[b]ased on the doctor's report and diagnosis, coupled with all the information that the board is considering, the board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community." Petitioner notes that the board used the same boilerplate wording rejected in *Castro*, 232

Or App at 85—"'Based on the doctor's report and diagnosis, coupled with all the information that the board is considering'"—to support its conclusion that the petitioner suffered from a PSED making him a danger to the health or safety of the community. It is apparent that the board's order references the contents of the entire record, as opposed to particular parts of the record that were pivotal. The order, therefore, offers a mere conclusion and does not permit us "to determine if the board's findings, reasoning, and conclusions demonstrate that it acted in a rational, fair, and principled manner in deciding to defer petitioner's parole release." *Gordon*, 343 Or at 634. Accordingly, we reverse and remand for the board to provide an explanation of its decision.

Reversed and remanded.

**ARMSTRONG, P. J.,** dissenting.

In 1999, in response to *Martin v. Board of Parole*, 327 Or 147, 957 P2d 1210 (1998), the legislature amended ORS 144.335(3), adding the first sentence of that provision, as italicized:

> *"The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority.* The Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

(Emphasis added.) The majority asserts that its "reading of the first and second sentences gives effect to both," yet it devotes a full half of its opinion to stripping the first sentence of any legal effect. I respectfully dissent.

In order to understand the 1999 amendment—and thereby the requirements imposed on the board through ORS 144.335(3)—it is necessary to understand *Martin*. In *Martin*, the petitioner had been convicted of abusing a child and had been sentenced to a term of imprisonment followed by 36 months' post-prison supervision, incident to which the board had set special supervision conditions for his release.

The petitioner sought administrative review with the board, objecting to a condition that he not enter Lane County, where the victim of his crimes was living, and arguing that it imposed an inordinate hardship by preventing him from traveling between the northern and southern parts of Oregon any place west of the Cascade range. On reconsideration, the board modified the condition to allow the petitioner to travel through Lane County on Highway 101. The board explained that the condition served to protect the victim from further injury and that the state's interest in that protection out-weighed the petitioner's interest in entering Lane County other than as provided in the condition.

We reversed the board's order and remanded for reconsideration. Relying on ORS 144.335 and its reference to ORS 183.482(8), we concluded that, in order to provide a meaningful basis for judicial review, "the [b]oard must offer a rational explanation of its decision that the special conditions it imposes are necessary to effectuate the objectives of the statute" under which the board had acted. *Martin v. Board of Parole*, 147 Or App 37, 45, 934 P2d 626 (1997), *rev'd on other grounds*, 327 Or 147, 957 P2d 1210 (1998).

The board sought Supreme Court review of our decision, arguing that we had exceeded the scope of our review authority under ORS 183.482(8). The board's argument centered on the fact that the board is exempt from the requirement in the Administrative Procedures Act (APA) that final agency orders include findings of fact and conclusions of law. *See* ORS 183.470(2) ("A final order shall be accompanied by findings of fact and conclusions of law."); ORS 183.315(1) (exempting the board from the provisions of ORS 183.470). Thus, the board argued that reviewing courts could not impose upon it, incident to judicial review, a requirement from which the board was statutorily exempt, *viz.*, connecting facts with legal conclusions in its orders.

So framed, the issue on review distilled to "whether [judicial review] authority under ORS 183.482(8) extends to requiring that agencies like the [b]oard provide explanations in their opinions that connect their choice of action with the facts of the case." *Martin*, 327 Or at 156. The court answered that question in the affirmative. Relying on *Drew*

*v. PSRB*, 322 Or 491, 909 P2d 1211 (1996), the court concluded that "the requirement of some kind of an explanation connecting the facts of the case * * * and the result reached by an agency is a requirement of ORS 183.482(8), as that section has been construed authoritatively by this court." *Martin*, 327 Or at 157.

The Oregon Department of Justice (DOJ) responded to *Martin* by seeking legislation to overturn it. The result was Senate Bill (SB) 401 (1999), which, as introduced, amended the APA by adding a sentence to ORS 183.482(8):

> "Nothing in this subsection shall be construed to require an agency to explain how the agency's order is supported by the facts and the evidence in the record if the agency is exempt from the requirement of making findings of fact or conclusions of law under ORS 183.470 or other law."

DOJ presented testimony that the bill was a direct response to *Martin* and expressed concern that some agencies—particularly the board—"could not maintain [their existing level of] production if [they] were required to draft a more formal order in every case," as *Martin* required. Testimony, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Ex A (statement of Assistant Attorney General Christine Chute). Although SB 401 applied to other agencies as well, DOJ focused its discussion throughout the legislative process on *Martin*'s effect on the board, emphasizing the important role that standard orders play in the board's work due to the large number of orders that it issues. *See id.*; Testimony, House Committee on Judiciary, SB 401, Mar 17, 1999, Ex D (statement of Assistant Attorney General Philip Schradle).

The Oregon Judicial Department (OJD) opposed the bill on the ground that it would erode the quality of judicial review of orders issued by the affected agencies and increase the workload of the courts. Testimony, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Ex C (statement of James W. Nass, Appellate Legal Counsel for the Supreme Court and Court of Appeals). Accordingly, OJD presented proposed amendments that sought to preserve *Martin*'s holding. It did that by creating a formal procedure in which an agency would have 30 days from the filing of a petition for judicial review to review its order for compliance with *Martin* and, if

necessary, to issue a new order with an expanded explanation connecting the facts found by the agency with the result that it reached. *Id.* Touted as a compromise, OJD's approach reflected an acknowledgement that, given the board's high volume of orders, it would be "unable to produce the kind of orders that are suitable for judicial review for every case." *Id.* Accordingly, a premise of OJD's approach was that a significant number of board orders would go unchallenged and, therefore, the board could effectively continue issuing standard orders in those cases. *See generally* Testimony, House Committee on Judiciary, SB 401, Mar 17, 1999, Ex E (statement of James W. Nass).

Eventually, the text of SB 401 was replaced with language that represented a compromise between DOJ and OJD that was achieved during a meeting of the Attorney General, the Chief Justice, and Justice Gillette, who had authored the court's opinion in *Martin*. The scope of the bill was narrowed to apply only to the board, and, instead of amending the APA, it amended the board's enabling legislation, adding the first sentence to the judicial review provision in ORS 144.335:

> *"The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority.* The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

Or Laws 1999, ch 618, § 1 (emphasis added).

Unfortunately, little of the legislative history addresses the intended effect of that compromise. At a hearing before the Subcommittee on Civil Law, a DOJ representative explained the impetus for the compromise—that is, the disagreement between DOJ and OJD—but failed to shed light on the operation of the amended language. The DOJ representative told the subcommittee:

> "There was some disagreement between the Department of Justice and the Judicial Department about the wisdom of the original proposal that amended the Administrative

Procedures Act. Our primary concern was with the Board of Parole orders, due to [the board's] very, very large volume. And my boss, the Attorney General, sat down with the Chief Justice of the Supreme Court and Justice W. Michael Gillette, and worked out some alternative language and, through the good auspices of legislative counsel, massaged that and have come up with this that I believe it is fair to say that everyone is satisfied with this now, although now it only applies to the parole board—not to the PSRB or anyone else that would have been covered by the first bill."

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, SB 401, June 1, 1999, Tape 185, Side A (statement of Assistant Attorney General Christine Chute).

The only other recorded discussion of the amendment occurred on the House floor in the following exchange between Representatives Shetterly and Bowman:

"[Rep. Shetterly:] Senate Bill 401 comes to you also from the Civil Judiciary Committee. It relates to orders of the state Board of Parole and Post-Prison Supervision that are appealed to the Oregon Court of Appeals, *and it simply provides that the form of order from the state board is exempt from certain formal requirements that apply to other state agencies regarding what the orders must contain for the purpose of judicial review.* This bill is passed out of the Senate, we did some amending to it here in the House that was negotiated and agreed to by the courts and by the Board of Parole and Post-Prison Supervision, as well as the Department of Justice. It is a very technical bill; I urge your support for it.

"\* \* \* \* \*

"[Rep. Bowman:] My question has to do with whether or not this bill would limit the information that inmates would receive as they are talking to the parole board about what they need to do to be released.

"[Rep. Shetterly:] Thank you for the question. No, it does not limit the information that inmates are to receive. This statute—this bill deals only with the form of orders that would be transmitted from the case to the Court of Appeals for the purpose of judicial review."

Tape Recording, House Floor, SB 401, June 11, 1999, Tape 113, Side B (statements of Rep Lane Shetterly and Rep Jo Ann Bowman) (emphasis added). Immediately thereafter, the House passed SB 401. The Senate adopted the House amendments without any significant discussion.

Keeping all of that in mind, it is our task to discern the intention of the legislature, if possible, in amending ORS 144.335(3). ORS 174.020(1)(a). Undertaking that task, the majority concludes that, as amended, ORS 144.335(3) requires that, "although no particular form of order is required, the board must provide some explanation connecting key facts or at least portions of the record and the board's conclusion, and * * * the level of detail in the explanation may vary depending on the conclusion the board must justify." 258 Or App at 443. However, prior to the 1999 amendment, *Martin*—at which the amendment was directly aimed—had unequivocally construed the statute to require the board to provide "some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached by [the board]." 327 Or at 157.

Respectfully, I cannot discern a difference between the two standards, *viz.*, the standard identified by the majority in this case and the standard identified by the court in *Martin*. Neither does the majority identify one. Instead, dividing the text of the amendment into two clauses, the majority posits that the first clause—*viz.*, [t]he order of the board "need not be in any special form"—"*is consistent with and reaffirms*" the board's exemption from the general APA requirement that final agency orders "shall be accompanied by findings of fact and conclusions of law." 258 Or App at 436, 436 n 3 (emphasis added); ORS 183.470(2); *see also* ORS 183.315(1) (ORS 183.470 does not apply to final orders of the board). The majority acknowledges that the second clause—*viz.*, "the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority"—is "less clear," but contends that it "suggests that an order, *on its face*, should reflect to the reviewing court a proper basis for the board's decision." 258 Or App at 436 (emphasis in original).

That, it seems, is a circuitous way of saying that the amendment is redundant, and I do not believe the legislature would endeavor to amend ORS 144.335(3) solely to maintain the status quo set by *Martin*. The majority's textual and contextual arguments to the contrary are unpersuasive. As to the text, while (as the majority repeatedly points out) the second sentence of ORS 144.335(3)—*viz.*, "[t]he Court of Appeals may affirm, reverse[,] or remand the order on the same basis as provided in ORS 183.482(8)"—survived the amendment unchanged, it is now prefaced with the proposition that, for purposes of judicial review—including substantial-evidence review—it must appear from the board's order "that the board acted within the scope of the board's authority." Thus, in order to emphasize the continuing vitality of the statute's second sentence, the majority reduces the text of the amendment to a mere confirmation of *Martin*'s holding.

As to context, the majority points emphatically to ORS 144.135, which requires the board to "state in writing the detailed bases of its decision[]" regarding parole release dates. 258 Or App at 438. Relying on the ordinary meaning of those terms, the majority characterizes that statute to require "some particularized account of the bases of [the board's] conclusion, not merely a conclusory statement referring to the entire record." *Id.* at 438. I do not dispute the definitions of "detailed" and "decision" that the majority provides; I do dispute their significance and the conclusion that the majority draws from them.

The Supreme Court construed ORS 144.135 in *Anderson v. Board of Parole*, 303 Or 618, 740 P2d 760 (1987). *Anderson* involved an order in which the board had decided not to override the petitioner's minimum sentence. The applicable board rule authorized the board to override a sentence if four of the five board members voted to do that. The board's order stated that three members of the board had voted to override the petitioner's minimum sentence but two had not. The order did not give the reasons that the board members had voted as they had.

The Supreme Court concluded that the order complied with ORS 144.135, notwithstanding that it gave no

reason for the board members' votes. The court explained that the "vote and who made it constitute the basis for the decision not to override" the minimum sentence. *Id.* at 626. Thus, consistent with *Anderson*, I understand ORS 144.135 to require the board to state in its orders the grounds for its actions but not to require it to state the particularized reasoning that led the board to reach the conclusion on which its actions are based. *See also Harris v. Board of Parole*, 47 Or App 289, 301, 614 P2d 602, *rev den*, 290 Or 157 (1980) (explaining that, to satisfy ORS 144.135, the board order must state a basis for "why the Board did what it did").

Finally, the sparse legislative history addressing the final language of the 1999 amendment does not support the majority's conclusion that it served simply to "reaffirm[]" the holding of *Martin*. Though cursory, those discussions suggest that *some* change was intended, and, frankly, it seems that OJD may have conceded more than DOJ during their negotiations. As explained, the effect of the amendment was to "exempt" the board's "form of order" from "certain formal requirements that apply to other state agencies regarding what the orders must contain for the purpose of judicial review." It is difficult to imagine to what other "formal requirements" Representative Shetterly could have been referring other than the requirement recognized in *Martin*, *viz.*, an explanation connecting the facts of a case to the result.

My understanding of the amendment is bolstered, finally, by the legislature's clear understanding that SB 401 represented a negotiated compromise between the initial positions of DOJ and OJD, which were clearly delineated throughout legislative hearings in both the House and Senate. There are two conceptual ways in which the compromise could have been achieved. The first is by altering the depth of *Martin*'s requirement. That is, the amendment could redefine the required contents of an order that is sufficient for judicial review under ORS 183.482(8). The second is by altering the breadth of *Martin*'s requirement. That is, the amendment could limit *Martin*'s holding to some defined subset of board orders, reflecting the understanding—expressed by both DOJ and OJD—that the board could not realistically comply with *Martin* in every case.

It appears that SB 401 accomplished the former by specifying that an order of the board is "sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority." Notably absent from that language is any reference to an explanation connecting the facts of the case to the result reached, despite the existence of similar language in the draft legislation from both DOJ and OJD. *See* SB 401 (as introduced) (the board need not "explain how the agency's order is supported by the facts and the evidence in the record"); Testimony, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Ex C (statement of James W. Nass) (the board must provide an "explanation that connects the facts found by the agency with the result reached by the agency"). From that omission, as well as the other reasons set out above, I must conclude that the legislature intended to relieve the board of the substantial-reason requirement otherwise implicit in the judicial-review provisions of ORS 183.482(8).

Accordingly, I dissent.