Argued and submitted September 27, 2012, affirmed September 25, 2013, petition for review denied January 16, 2014 (354 Or 699)

## JASON J. GRIMM,
*Petitioner,*

*v.*

## BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A148397

310 P3d 736

Jonah Morningstar, Deputy Public Defender, argued the cause for petitioner. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Wollheim, Presiding Judge, and Nakamoto, Judge, and Edmonds, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Petitioner, who is serving a dangerous offender sentence after being convicted of arson and other crimes in 2000, seeks judicial review of an order of the Board of Parole and Post-Prison Supervision (the board), arguing that the board erred in deferring his parole consideration date.[1] In particular, he asserts that the board erred in concluding that he has a condition predisposing him to the commission of crime to such a degree as to render him a danger to the health or safety of the community, and that the condition that made him dangerous is not in remission and that he remains a danger. *See generally* ORS 144.228(1)(b)(A) (at parole consideration hearing for dangerous offenders, the board may set a release date if it finds the petitioner no longer dangerous or that he remains dangerous but can be adequately controlled in the community); ORS 144.226(2) (examining psychiatrist or psychologist shall make a report to the board as to whether the petitioner has a "mental or emotional disturbance, condition or disorder predisposing the person to the commission of any crime to a degree rendering the examined person a danger to the health or safety of others"). For the reasons set forth below, we affirm the board's order.

We begin with a brief synopsis of the material that was before the board. Petitioner's current convictions arose out of a series of fires he set in 2000. Between 1992 and 2000, petitioner had numerous juvenile adjudications and convictions for fire-related crimes, as well as theft crimes, many of which resulted in probationary sentences. During those years, he was found in violation of his probation on numerous occasions. Over the course of his involvement with the juvenile and adult corrections systems, petitioner has been diagnosed with a number of conditions, including pyromania,[2] attention deficit hyperactivity disorder, borderline intellectual functioning, a conduct disorder (as a juvenile), and a personality disorder (as an adult). He was imprisoned on the present charges in 2000, and released on post-prison

---

[1] The board conducts such hearings pursuant to OAR 255-037-0005.

[2] *Stedman's Medical Dictionary* 1493 (27th ed 2000) defines "pyromania" as a "morbid impulse to set fires."

supervision (PPS) in 2007. He violated the conditions of his PPS and was returned to prison in 2008. Between his incarceration in 2000 and his release in 2007, petitioner received more than a dozen disciplinary sanctions for various acts of misconduct in prison, including disobedience, possession of contraband, assault, disrespect, and fraud. After his reincarceration in 2008, he was disciplined for disobedience and providing false information to the board.

Petitioner has received numerous psychological evaluations over the years, the most recent of which were done in August 2008, after his PPS revocation, and in October 2009, shortly before the hearing in the present proceeding. The psychologist who prepared the 2008 evaluation concluded that petitioner had a severe antisocial personality disorder and was not amenable to community-based supervision. The 2009 evaluation, which is the primary focus of petitioner's challenge in the present case, indicated that the psychologist who prepared the evaluation, reviewed petitioner's records, conducted a clinical interview of petitioner, and administered several tests, including one designed to measure the risk of violence on which petitioner scored in the "moderate" range for risk of future violent behaviors. Petitioner was diagnosed with an antisocial personality disorder and a history of attention deficit hyperactivity disorder. The psychologist concluded that, in light of the material in the record, the test results, and petitioner's responses during the clinical interview, petitioner "makes marked use of the defensive strategies of minimization, rationalization, and denial." He further concluded that the test results indicated cognitive difficulties and lack of insight. He concluded, "As a result of the aforesaid, I can only conclude, in my clinical judgment, that [petitioner] would remain a danger to the community if he were to be released at this time. I consider his prognosis to be very guarded."

In its order deferring petitioner's parole consideration, the board referred to the most recent psychological report and concluded that petitioner had "a mental or emotional disturbance, deficiency, condition or disorder predisposing [petitioner] to the commission of any crime to a degree rendering the [petitioner] a danger to the health or safety

of others; therefore, the condition which made [petitioner] dangerous is not in remission and [petitioner] does continue to remain a danger." (Capitalization omitted.)

Petitioner makes numerous arguments and subarguments in his assignment of error, three of which we discuss below. We reject petitioner's remaining arguments without discussion. We briefly turn to petitioner's argument that deferring parole consideration based on a disability violates his rights under the Americans with Disabilities Act (ADA), 42 USC sections 12101 to 12213, and ORS 659A.142(5)(a), both of which make it unlawful for government programs to discriminate against a person on the basis of disability.[3] In the present proceeding, the board rejected petitioner's contentions, indicating that its "deferral of [petitioner's] parole consideration date was based on [his] dangerousness, not on [his] condition or disorder." That reasoning is consistent with our conclusion in *McCline v. Board of Parole*, 205 Or App 144, 148, 133 P3d 439, *rev den*, 342 Or 46 (2006), that the board's deferral of parole release based on a finding that an inmate had a severe emotional disturbance and that he posed a threat to the health or safety of the community did not violate the Rehabilitation Act of 1973, because it was based on both his "severe emotional disturbance *and* his dangerousness." (Emphasis in original.) Petitioner points to nothing in either the ADA, ORS 659A.142, or case law interpreting those statutes, that would suggest that the board is obliged to release a dangerous inmate into the community simply because the dangerousness is related to, or the result of, a disability.

That brings us to petitioner's substantial evidence and substantial reason challenges. We understand petitioner to be arguing, in effect, that the record does not support the board's conclusion that he remains dangerous (and its implicit conclusion that he is not amenable to community-based

---

[3] 42 USC section 12132 provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

ORS 659A.142(5)(a) provides that it is unlawful "for state government to exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability."

treatment) and that the board did not adequately explain why it relied on the psychological report to reach that conclusion. Petitioner argues that the psychological report cannot support the board's conclusion because the record does not adequately establish the psychologist's credentials, relying on *Castro v. Board of Parole*, 232 Or App 75, 84, 220 P3d 772 (2009) (noting dearth of information in the record with respect of one of the expert's credentials).

*Castro* does not assist petitioner here. In that case, the board had before it two psychological evaluations, a highly positive one from the petitioner's treating psychologist and a negative one from another psychologist, and our decision critiqued the thoroughness and conclusions of the latter. *Id.* at 80, 84. We concluded that, in a circumstance such as that, where "expert opinions have been offered on both sides of an issue" and one report is markedly less thorough than the other, the board is obligated to demonstrate its reasoning in relying on the less thorough report. *Id.* at 84-85; (citing *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988) ("when the credible evidence apparently weighs overwhelmingly in favor of one finding and the [b]oard finds the other without giving a persuasive explanation[,]" the order lacks "substantial reason")).[4] Here, in contrast to the petitioner in *Castro*, petitioner raised no challenge before the board to the credentials of the psychologist who prepared the report. More importantly, however, this case is unlike *Castro* in that the board did not have multiple reports expressing differing conclusions as to the inmate's suitability for parole release.[5]

Similarly, petitioner offers critiques of several of the tests on which the psychologist relied, suggesting that they are "diagnostic" rather than "predictive" and thus do not provide an adequate basis for the psychologist's opinion. Again, petitioner raised no challenge to the adequacy of the psychological evaluation in that respect below and, given the absence of any evidence in the record supporting

[4] *Cf. Jenkins v. Board of Parole*, 258 Or App 430, 309 P3d 1115 (2013) (when the board offers a conclusion without explanation, the board's order may not be supported by substantial reason).

[5] We note that the earlier psychological reports in the record are largely consistent with the current report.

petitioner's claim that such tests should not be used or relied on in this circumstance, there is no basis for discounting the psychologist's opinions based on petitioner's criticism of those tests.

Finally, we turn to petitioner's argument that the record as a whole does not support the board's finding that he remains dangerous and cannot be adequately controlled in the community. Petitioner argues that most of his prison disciplinary violations occurred in the first five years of his confinement, and adds that a psychological report from 2007 noted a test result indicating that inmates with this type of profile tended to have difficulty with institutional adjustment, but that they did not have higher recidivism rates than average. From that, petitioner posits that "there is no nexus between petitioner's institutional adjudications and his possible future dangerousness if released on parole." We disagree with petitioner's conclusion. Petitioner not only has a lengthy and significant history of disciplinary violations while imprisoned, but also a lengthy and significant history of violating probation and PPS when not institutionalized. In short, petitioner's record of behavior both while in prison and while outside of prison support the board's conclusion that he cannot be adequately controlled in the community.

In sum, we conclude that substantial evidence in the record supports the board's decision to defer petitioner's parole consideration date.

Affirmed.